**Nicholas Campagna, a Minor, by His Father and Next Friend, Thomas Campagna, Plaintiff-Appellant, v. Paul A. Cozzi, Defendant-Appellee.**

Gen. No. 49,755.

First District, Second Division.

May 11, 1965.

Rehearing denied June 9, 1965.

Young & Hickey, and Michael M. Kenyon, of Chicago (Burton H. Young and Lawrence P. Hickey, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This appeal comes from a judgment entered on a jury verdict in the Circuit Court of Cook County on October 9, 1963, which verdict found for the defendant, Paul A. Cozzi and against the plaintiff.

This action was brought by Thomas Campagna on behalf of his minor son, Nicholas, for damages resulting from injuries sustained when the child fell from the back porch of a building owned by the defendant Cozzi. The real estate agent who rented the premises to the plaintiff's father was also a party defendant at the trial but the court below directed a verdict for that defendant and no appeal has been taken from that order.

The accident took place at the rear of a building located at 402 North Austin Boulevard in Oak Park, Illinois. The building is similar to most of the six apartment buildings in this area; that is to say, the building was three stories tall with two apartments on each floor. This building differed from most, however, in that the first floor was occupied by an addressograph business, leaving only the second and third floors for apartments. The plaintiff and his family occupied one of the third floor apartments under a lease entered into December 15, 1958.

It is undisputed that the building had no back yard, but that immediately behind the building was a parking lot. At the rear of this building were open back porches constructed of wood. These porches run across

the entire length of the building at the rear, and the two apartments on each floor open onto these porches through doors leading from the kitchens.

A stairway runs parallel to the rear of the building, and enters the porch on the third floor at a point somewhat north of the center of the building. The porch is not partitioned, though the area in the center of the building is narrower than the portion directly to the rear of the kitchen of each apartment. This porch was surrounded by a railing of vertical wood slats which were nailed to crossbeams at the top and bottom.

Mrs. Campagna, mother of the injured child, testified that after she made application to rent the apartment she first learned there was no back yard or basement. She said that she wanted some place for her children to play and that she needed a place to dry her laundry. According to Mrs. Campagna, Mr. Johnson, the real estate agent, said she could share the entire porch with her neighbor as a back yard for their children's play and for her washing. Mr. Johnson denied having had a conversation of this tenor with Mrs. Campagna.

The Campagnas had three children, the oldest of whom was four. Their neighbors on the third floor, the Baumgartens, had four children, the oldest of whom was also four years of age. There is undisputed testimony that the children of the two families sometimes used the entire porch as a play area. Mr. Baumgarten put a gate at the head of the stairs to keep the children from falling down the stairway and also put a folding gate at the center of the porch which apparently was used at times to keep the children of each family confined to one portion of the porch, though Mrs. Baumgarten said she didn't know why her husband put it up.

Mrs. Campagna testified that she used the entire porch regularly for drying the family wash. Mrs. Baumgarten had a dryer in her kitchen and did not use

211

the back porch for laundry as much as Mrs. Campagna. In the summer months, however, she seemed to use the back porch for drying her laundry rather than heat up her kitchen by using the dryer. Mrs. Baumgarten testified that Mrs. Campagna did not always use the entire back porch to dry her wash, but only had done so on one or two occasions. She said that Mrs. Campagna always asked her before using the north side of the porch.

There is no dispute as to how the accident occurred. During the afternoon of August 14, 1959, the Baumgarten's oldest child, who then was about four years old, was playing on the south portion of the porch—that is to say, the portion behind the apartment occupied by the Campagna family. While playing there, he pulled out one of the slats in the railing. There is no question but that the nails which had held this slat in place had rusted out. The plaintiff's mother testified that she saw the Baumgarten boy pull out the slat and throw it down. She says she was scolding the child, telling him it was wrong to destroy other people's property when she heard a scream and turned to see her son, Nicholas, falling through the opening in the railing.

It is unnecessary to discuss the injuries as no question concerning their extent is raised on this appeal.

The question raised by this suit is whether or not the landlord had the duty to use ordinary care to keep the back porch and railings in good condition. It is the theory of the appellant that this porch was used in common by the tenants on the third floor, and that the landlord, therefore, had this duty. The landlord claims that each tenant was leased one-half that back porch and that because of this he had no control and the duty to repair rested with the tenants.

█ The question of whether the back porch was a common area over which the landlord retained control is a question of fact for the jury's determination.

Loveless v. Warner, 37 Ill App2d 204, 185 NE2d 392 (1962). The evidence on the matter is not conclusive; indeed the question is a very close one. There was evidence that the porch was used by both families, but it seems that except for the children, each family tended to stay on its own side. The lease is completely inconclusive. It is a form lease meant for use in renting any unheated apartment. It is printed by a company in Chicago which specializes in legal forms. There is nothing anywhere on the lease which tells whether the landlord rented one-half of the back porch along with the apartment, or whether he kept the porch area for the common use of the tenants. The only mention of a porch in the lease occurs in the tenth paragraph:

"Tenth.—That lessee will not permit anything to be thrown out of the windows, or down the courts or light shafts in said building; that nothing shall be hung from the outside of the windows or placed on the outside window sills of any window in the building; that no parrot, dog or other animal shall be kept within or about said apartment; *that the front halls and stairways and the back porches shall not be used for the storage of furniture or other articles."* (Emphasis supplied.)

The appellant insists that this section shows an intention by the landlord to exercise control over the back porches. The landlord points out that this paragraph does not reserve the porch area for the common use of the tenants. We agree with the latter contention. An agreement by a tenant not to litter the porch with furniture and the like does not put control of the porch in the landlord. The tenant still has control over the porch; he has only agreed not to store furniture there. A lease could read, "Lessee agrees not to play the radio after 10:00 o'clock at night." This would not put

control of the apartment in the landlord so that he would have the duty to make repairs.

In short, the question could be decided either way by a jury and whatever result they came up with could not be set aside as being against the manifest weight of the evidence. It is, therefore, extremely important that all proper evidence that is offered be admitted. In this case, any error in the admission of evidence could be extremely prejudicial.

The appellant offered proof that after the accident, the landlord repaired the railing through which appellant fell. This was offered, not as proof of negligence, but only as proof of control of the back porch by the landlord. The court below refused to admit this evidence. This was error. Murphy v. Brichler, 305 Ill App 6, 27 NE2d 1003 (1940); Wigmore on Evidence, Vol II, § 283, p 158, and cases there cited. "When the defendant's liability depends upon whether a landlord or his tenant was in *control of the premises,* . . . the acts of control of such a person are provable and an act of repair done after the injury may chance to be such an act." Wigmore, supra. In a case as close as this one, the proof that the landlord repaired the railing after the accident might have brought about a different result, and the refusal of the court below to admit this evidence was prejudicial error.

Since we are to remand this matter for a new trial, we feel it necessary to discuss briefly another point raised by the appellant. The appellant objects to an instruction given by the court below concerning the duty of a landlord in regard to repairs. That instruction reads:

"A landlord must use ordinary care to keep those portions of the premises that are reserved for the common use of tenants and the public in a

reasonably safe condition for the purposes for which those portions of the premises were reasonably intended."

The appellant does not object to this instruction as an abstract proposition of law, but says, "The court's instruction, by the use of the word 'reserved', rhetorically superimposed a need for the evidence adduced at trial to show some positive or affirmative 'reservation' of the porch for common use in the lease. The plaintiff's evidence, however, did go to prove the legal equivalent of 'reserved' to-wit: that *the porch was commonly used,* by the third floor tenants, a fact competent upon which to predicate the landlord's duty."

The appellant offered an instruction, refused by the court below, which reads:

> "if you believe from a preponderance of the evidence and under the instructions of the Court that the entire third floor rear porch from which the plaintiff fell was reserved by the landlord, Paul A. Cozzi, for the common use of the third floor tenants, or was used in common by the third floor tenants with the knowledge and consent of the landlord, then you are instructed that the landlord must use ordinary care to keep the porch in a reasonably safe condition for the purposes for which the porch was reasonably intended."

At the conference on instructions this proffered instruction was objected to by the appellee on the grounds that it "would intimate or suggest that if two tenants got together and decided they would use the porch that this would bind the defendant, . . ."

█ It was claimed that the two tenants could not take it upon themselves to use the porch in common and thereby impose new duties on the landlord, if the

215

landlord had not intended the porch for use as a common way. We think this is a valid point.

■ ■ The instruction given by the court below is admittedly correct. If the appellant feels that the jury might misinterpret the word "reserved" to mean that an express reservation in the lease is necessary, he is entitled to have an instruction that would tell the jury that such reservation can be implied. Such an instruction should tell the jury that while use of the porch in common by the tenants with the knowledge and consent of the landlord is not in and of itself enough to impose a duty to repair on him, it may be evidence that it was intended by the landlord that the porch be used in common by the tenants.

The judgment of the Circuit Court is, therefore, reversed and the cause remanded for proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded with directions.

BURKE, P. J. and LYONS, J., concur.