SHANNAN OFFUTT, Plaintiff-Appellee, *v.* PENNOYER MERCHANTS TRANSFER COMPANY, Defendant-Appellant.—(PENNOYER MERCHANTS TRANSFER COMPANY, Third-Party Plaintiff-Appellant, *v.* R. R. DONNELLEY & SONS COMPANY, Third-Party Defendant-Appellee.)

First District (5th Division) Nos. 59937, 60515 cons.

Opinion filed February 13, 1976.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland and D. Kendall Griffith, of counsel), for appellant.

John G. Phillips and Joseph M. Fasano, both of Chicago (Sidney Z. Karasik and Michael Kreloff, of counsel), for appellee Shannon Offutt.

Howard T. Brinton and Thomas M. Karvick, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee R. R. Donnelley & Sons Co.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant and third-party plaintiff Pennoyer Merchants Transfer Company (Pennoyer) appeals from a judgment in plaintiff's favor in a personal injury suit and from a judgment in favor of third-party defendant R. R. Donnelley & Sons Company (Donnelley) in an action for indemnification. On appeal, Pennoyer contends that: (1) both as a matter of law and in accordance with the manifest weight of the evidence, it was not negligent and plaintiff was contributorily negligent, (2) it was entitled to indemnification from plaintiff's employer, Donnelley, and (3) it was denied a fair trial by several evidentiary errors and by certain conduct of opposing counsel.

The instant case went to trial on plaintiff's third amended complaint which sought damages for injuries arising from his 28-feet fall through an open hatchway on the second floor of Donnelley's printing plant which was closed for the Memorial Day Holiday, May 30, 1969. Pennoyer was the rigging contractor who had opened the hatchway in order to lift a printing press from the loading dock below and move it into position in the southeast portion of the second floor. Count I of the complaint against Pennoyer alleged negligence and Count II alleged liability under the Structural Work Act. Pennoyer filed a third-party action for indemnification against Donnelley.

The following pertinent evidence was adduced at trial.

*For the plaintiff*

*Edward Tylick*

He had been a machinery mover and rigger employed by Pennoyer for 27 years prior to May 31, 1969. On Thursday, the last working day before the holiday, the hatchway was covered with a tarpaulin placed over planks and ladders. The tarpaulin was in good condition and had no holes in it. The tarpaulin would be secured by tying the corners to some equipment or by placing heavy equipment on the edges. A man's weight could be supported by the tarp in certain areas.

Although Pennoyer had wooden barricades, some of which had blinker lights, which it had used on prior occasions, they were not used on this job. A rope barricade protected the hatchway. A line ran from

a metal ladder on the north wall of the plant, which was parallel to the north side of the hatchway, across to the northernmost leg of a lifting gantry along the west side of the hatchway. Another line was strung from this leg to another leg on the same side, but further south. There were other ropes that ran from this second gantry leg on the west side of the new machine which was sitting along the southern edge of the hatchway, then across to similar gantry legs on the east edge of the hatchway and back to a steel cabinet on the north wall near the original metal ladder. No part of the hole was unprotected by the rope. He recalled that in a prior deposition he did not know how the ropes had been tied. There were no guards on the floor near the edge of the hatchway.

The photographic exhibits did not depict the area as it appeared on May 30, 1969. The new machine and a parked fork lift truck were missing and the ropes were never positioned as shown by the picture.

At an inspection of the scene on Saturday morning, he saw that the northwest corner of the tarpaulin had loosened.

On cross-examination, he admitted that the photographs did not show half of the planks that were used to cover the hatchway. The rope barricade was four feet high. A person would have to step over the top of the rope or crouch underneath it in order to reach the hatchway. With the exception of the cabinet and the ink barrels, all of the equipment in the photographs belonged to Pennoyer.

*Victor Buchenot*

He was also employed by Pennoyer as a machinery mover and rigger in 1969. He had worked for Pennoyer for 15 years. He generally substantiated Tylick's testimony on the materials used to cover the hatchway. A 50-pound bucket held down the west corner of the tarpaulin. A rope ran from the ladder to the gantry and no one could reach the hatchway without either stepping over or climbing under the rope. On Saturday he saw plaintiff lying on the dock and also observed the torn, northwest corner of the tarpaulin.

On cross-examination, he could not recall if the corner of the tarpaulin was still secured by the bucket after the accident. The tarpaulin was not tied at the corners. He admitted that the photographs did not show the rope between the gantries, nor could he recall having seen the barrels which were shown.

*Shannon Offutt on his own behalf*

He was a guard employed by Donnelley. He was working the midnight to 8 a.m. shift in the north building on the morning of May 31, 1969. He started his Detex route, which records a guard's location at a certain time, from the main desk at 1 a.m. He arrived at the scene

45 minutes later. He registered his key in Detex station #12 which was immediately to the west of the metal ladder on the north wall of the second floor. He started to go to the west, but encountered an obstruction. He stepped backwards one or two paces and fell through the hatchway. There were no barricades. He did not see a rope from the wall to any equipment.

On cross-examination, he admitted that there was enough light to see where he was going, but stated that it was hard to distinguish objects. He had not been assigned to this route in the eight or ten months prior to the occurrence. Neither his foreman nor any superior ever mentioned the open hatchway. He did not turn after encountering the obstruction, but merely backed up. He did not bend, crouch or step up before he fell, nor did he feel a rope.

*Richard Kidwell*

He is Donnelley's manager of safety and industrial hygiene. There were two holes in the tarpaulin on Monday morning. He did not know when the rope barricade had been put up.

On cross-examination, he admitted that although he was head of Donnelley's safety department, he did not know outside contractors were at work in this area or when Detex patrols were conducted by the guards. Anyone on the west side of the rope barricade could not stand on any portion of the hatchway.

*Edwin Maynard*

He is Donnelley's assistant safety director. On Monday, the tarpaulin had been rearranged to improve the covering. A Pennoyer foreman indicated that the rope barricade had been readjusted.

On cross-examination, he stated that when he visited plaintiff at the hospital, plaintiff said he could not remember how the accident occurred. The closest point of the hatchway to the rope was approximately five feet.

*Albert Powers*

He is a project engineer at Donnelley. He inspected the area on Saturday before any Pennoyer personnel arrived. The northwest corner of the tarpaulin was down. He did not recall seeing a rope from the metal ladder to the gantry. Over Pennoyer's objection, he was allowed to circle the rope which he did not recall seeing on plaintiff's photographic exhibit. After refreshing his recollection from a prior deposition, he stated that the rope was added after the accident. In his opinion, the scene represented a construction area with a hazard.

On cross-examination, he stated that the specifications of Donnelley's agreement with Pennoyer required that the area be barricaded and that

one means of barricading is by rope. He had seen rope barricades at the scene previously.

*Bernard Enfield*

He is a consulting safety engineer. The American National Standards are minimal recommendations which are used as guides and customs in the industry. Safeguards for holes and openings include a "standard railing," which consists of a top rail, an intermediate rail and posts, and toeboards along the edge of the opening. In his opinion, the standards require the user of the opening to erect the safeguards. Chapter 75—1 of the City of Chicago Building Code, the Accident Prevention Manual for Industrial Openings of the National Safety Council and the Safety Manual of the Associated General Contractors of America also provide for guards or railings at floor openings.

On cross-examination, it was his opinion that the custom in the industry placed the duty to barricade upon the party that opened a hole. In his opinion, a contract which contained a barricading provision and a provision requiring the contractor to follow all applicable laws also imposed the duty to barricade upon the contractor.

Following further testimony on the nature and extent of his injuries, plaintiff rested his case. Defendants' motion to strike the Structural Work Act allegations in Count II of the complaint was sustained.

*For Pennoyer*

*David McElligott*

He was a rigger employed by Pennoyer. On May 29, his crew tied a rope from the iron ladder on the north wall to the leg of the gantry. On Saturday morning, the rope was in the same position.

On cross-examination, he admitted that he could not remember if he had tied the rope himself nor if another Pennoyer employee had arrived at the hatchway before him on Saturday.

*Edwin Feldheim*

He was Pennoyer's rigger foreman. His crew tied the rope from the ladder to the gantry on Thursday evening. The ropes were in the same position after the accident.

On cross-examination, he admitted that Pennoyer was required to barricade under the contract. He was familiar with the safety regulations of his trade. He recalled streamers hanging on the rope and the opening in the tarpaulin being at its southwest corner.

*George Dombrowski*

He is a Donnelley security guard. He worked the four to midnight shift in the north plant on May 30, 1969. He made two Detex rounds during which he punched in at Detex station #12. Although he could

not recall where the ropes were located, he stated that the area was "more or less barricaded."

On cross-examination, he admitted that it was still daylight when he made his rounds at 5 and at 6:30 p.m. He did not see wooden barricades nor any paper on the rope barricade. He did not talk to plaintiff that evening.

*Walter Jakicic*

He is a Donnelley security guard. He also worked the four to midnight shift on May 30, 1969. He conducted Detex rounds at 9 and 10:30 p.m. There was a rope from the ladder to the beam. He mentioned the barricade to plaintiff when plaintiff came on duty.

On cross-examination, he admitted that he tripped near the beams on the west side of the hatchway. He recalls reading a memorandum about the hatchway. He did not see any paper on the ropes.

*Robert Skoog*

He was Donnelley's duty superintendent on May 31, 1969. He was notified of an accident in the north building at approximately 6:30 a.m. There was a rope between the tarpaulin and Detex station #12. On cross-examination, he admitted that there were gaps in the rope on the north wall and that he did not see a rope on the east side.

After Pennoyer had rested its case, Donnelley introduced certain relevant contractual provisions into evidence, and thereafter rested its case.

The jury returned a verdict of $500,000 in plaintiff's favor and against Pennoyer. The jury also returned a verdict of not guilty in favor of Donnelley in Pennoyer's third-party action. In answers to special interrogatories, the jury found plaintiff not guilty of contributory negligence and Pennoyer guilty of active negligence. Judgment was entered on the verdicts and this appeal followed.

OPINION

Pennoyer first contends that both as a matter of law and in accordance with the manifest weight of the evidence it was not negligent and plaintiff was contributorily negligent.

■■ The question of Pennoyer's negligence turns upon the existence and the adequacy of the rope barricade tied between the ladder on the north wall and the northernmost gantry leg on the western edge of the hatchway. A directed verdict on the issue of Pennoyer's negligence is appropriate only if all the evidence viewed in its aspect most favorable to plaintiff so overwhelmingly favors Pennoyer that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) Plaintiff testified that the rope did not exist. Albert

Powers, a Donnelley engineer, who arrived at the scene before any Pennoyer employees, could not recall seeing the rope. Moreover, plaintiff introduced evidence that even if the rope did exist it did not comply with industrial or municipal safety standards for such openings. Pennoyer's preoccurrence and post-occurrence witnesses denied the applicability of such standards and supported the existence of the rope. We believe that an issue of fact is raised by this evidence. Furthermore, when we view all the evidence most favorably to plaintiff, we cannot say that the question of negligence so overwhelmingly favors Pennoyer that no contrary verdict could ever stand.

■■ The jury's verdict on the issue of Pennoyer's negligence is based upon their unique opportunity to observe the demeanor of the witnesses, to assess the credibility of their testimony, and to determine the weight to be given the evidence. A contrary verdict must be clearly evident, grossly apparent or indisputable before a reviewing court will reverse a jury's findings. (*Gettemy v. Grgula*, 25 Ill. App. 3d 625, 323 N.E.2d 628; *E. A. Meyer Construction Co. v. Drobnick*, 49 Ill. App. 2d 51, 199 N.E.2d 447.) Here, the evidence supporting an opposite verdict is equivocal at best. Pennoyer's own foreman admitted a contractual duty to barricade. Although he recalled that streamers were attached to the rope, two other defense witnesses stated that no such warnings existed. Other defense witnesses recalled gaps in the rope barricade or could only state that the area was "more or less barricaded." As previously discussed, plaintiff introduced ample evidence to support his theory on this issue. Based upon this evidence, we cannot say that a verdict in defendant's favor was clearly evident, grossly apparent or indisputable.

■■ Similarly, the question of plaintiff's contributory negligence turns upon whether he acted reasonably in walking backwards after encountering an obstruction in his intended path. Plaintiff testified that after encountering the obstruction he retreated one or two steps without turning around, and that he thereupon fell through the tarpaulin. Pennoyer theorizes that plaintiff either stepped over the rope barricade or crouched under it and plaintiff says he did neither. Since there is a clear conflict in the evidence a question of fact arises and the issue of plaintiff's contributory negligence is not solely a question for the court. (See *Reid v. Employers Mutual Liability Insurance Co.*, 14 Ill. App. 3d 174, 302 N.E.2d 108, *aff'd on other grounds*, 59 Ill. 2d 194, 319 N.E.2d 769.) Nor has it been shown that plaintiff had any previous knowledge of the open hatchway or that he proceeded into the area in an unreasonable manner. (Compare *Mundt v. Ragnar Benson, Inc.*, 61 Ill. 2d 151, 335 N.E.2d 10.) We believe that the reasonableness of retreating a limited number of steps from a dangerous obstruction is a

question of fact for the jury to decide. When all the evidence is viewed in its aspect most favorable to plaintiff, we do not believe that the issue of his contributory negligence so overwhelmingly favors Pennoyer that no contrary verdict could ever stand, and, therefore, the trial court correctly denied Pennoyer's motion for a directed verdict.

Nor do we believe that the jury's finding on the issue of plaintiff's contributory negligence is against the manifest weight of the evidence. Pennoyer argues that plaintiff failed to maintain an adequate lookout and negligently walked backwards instead of first turning around before proceeding. However, Pennoyer failed to prove that a more reasonable response was available such that a contrary verdict would be clearly evident. The mere fact that a workman proceeds with his duties with his back facing an open pit is not, by itself, unreasonable. (*Spurr v. LaSalle Construction Co.* (7th Cir. 1967), 385 F.2d 322.) Indeed, we believe that the very limited number of steps taken, the congestion of machinery and other obstacles in the area, and the fact that plaintiff was retreating into the general area of safety which he had just left provide sufficient evidence to support the jury's findings.

■■ Pennoyer next contends that it is entitled to indemnification from Donnelley because Donnelley was actively negligent whereas its own negligence was passive. The jury specifically found that Pennoyer was guilty of active negligence. Nonetheless, Pennoyer argues that its negligence was passive and that Donnelley was actively negligent in requiring guards to enter a hazardous area and failing to warn them of the hazard. However, we believe that the jury could reasonably have decided that it was precisely because Donnelley knew that its employees would be in the area that it contracted for safety precautions with the rigging contractor, Pennoyer, who would be opening the hatchway.

Pennoyer's reliance on *Topel v. Porter*, 95 Ill. App. 2d 315, 237 N.E.2d 711, is unfounded. In that case, the sole tenant of a building failed to have the cables in an elevator safety device tested despite warnings from an elevator maintenance company that the device should have been inspected. This court reversed that jury's finding that the tenant was not guilty of active negligence when the safety device failed to function and a repairman who was working in the elevator was severely injured. Here, Pennoyer, through its employees, not Donnelley, created the danger when it opened the hatchway and then failed to fulfill its duty to reasonably protect the opening. For these reasons, we believe that the jury's verdict and answer to the special interrogatory are not contrary to the manifest weight of the evidence.

■■ Pennoyer finally contends that it was denied a fair trial by several evidentiary errors and by certain conduct of opposing counsel. It

first argues that the testimony of plaintiff's expert on various standards for the barricading of floor openings and on which party was required to barricade under the contract and under these standards invades the province of the jury. We believe that the scope of the safeguarding standards and the existence of municipal ordinances concerning floor openings are not within the common knowledge of the layman juror. Moreover, since the jury is free to weigh and even to disregard an expert's opinion on an ultimate question, such as the duty to barricade, Illinois courts have increasingly upheld the propriety of such inquiries when they assist the trier of fact in understanding expert testimony. (*Merchants National Bank v. Elgin Joliet & Eastern Ry. Co.*, 49 Ill. 2d 118, 273 N.E.2d 809.) Therefore, we reject Pennoyer's initial argument.

■■ Pennoyer next argues that it was error to admit seven photographs of the hatchway area which were taken on Monday, 2½ days after the occurrence. Remoteness in time and changed conditions do not necessarily render photographic evidence inadmissible. (*Burnett v. Caho*, 7 Ill. App. 3d 266, 285 N.E.2d 619.) After carefully examining the record, we note that the trial judge allowed Pennoyer wide latitude to bring to the jury's attention any changes in the photographs during its cross-examination. Consequently, we hold that the trial judge did not err when he admitted the photographs into evidence.

■■ Pennoyer also argues that it was error to exclude evidence that Donnelley removed Detex station #12 following the occurrence. It is well established that post-accident changes are not admissible to prove negligence in Illinois. (*Hodges v. Percival*, 132 Ill. 53, 23 N.E. 423.) The record discloses that Pennoyer's offer would not fit within the exception to the general rule when offered to show ownership or control. (See *Campagna v. Cozzi*, 59 Ill. App. 2d 208, 207 N.E.2d 739.) We believe Pennoyer's argument on this point is also without merit, and, therefore, reject it.

■■ Pennoyer further argues that plaintiff's counsel misstated the testimony of Albert Powers and implied that Pennoyer's counsel fabricated certain evidence. The record indicates, however, that plaintiff's counsel was well within the boundaries of proper argument when he drew reasonable inferences from Powers' entire testimony. Moreover, the alleged fabrications when viewed in their total perspective are merely attacks on the credibility of the witnesses and their motives and biases. (See *Saputo v. Fatla*, 25 Ill. App. 3d 775, 324 N.E.2d 34.) Plaintiff's references to a nonexistent memorandum appear to be an allowable characterization when the testimony both for and against its existence is considered. We do not believe that Pennoyer was prejudiced by plaintiff's counsel's statements.

■■ Finally, Pennoyer argues that Donnelley's counsel improperly asked the jury during closing argument to put themselves in Donnelley's position. It is improper to ask jury members to place themselves in the position of a party litigant when such a request is calculated to arouse their passions and prejudices. (*Brant v. Wabash R.R. Co.*, 31 Ill. App. 2d 337, 176 N.E.2d 13.) However, Donnelley's counsel analogized its own relationship to Pennoyer to that of a juror's relationship as a home-owner to an outside contractor working on the home. The record indicates that this was an isolated example used as an appeal to reason to aid the jury in understanding Albert Powers' role as Donnelley's project engineer. Even if counsel's reference technically asked the jury to put themselves in the position of a party litigant, we do not believe that the prejudice or passions of the jury were so clearly being appealed to that a reversal would be warranted on this ground alone. See *Bruske v. Arnold*, 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied*, 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.

For the reasons stated above, the judgments in favor of plaintiff and third-party defendant Donnelley are affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.