(No. 21638.—

THE SUPER-POWER COMPANY OF ILLINOIS, Appellant, *vs.* JACOB NAFFZIGER *et al.* Appellees.

*Opinion filed October 21, 1933.*

STEVENS & HERNDON, JESSE BLACK, JR., and H. C. FRINGS, for appellant.

J. M. POWERS, and RALPH DEMPSEY, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Super-Power Company of Illinois, a domestic corporation, filed its petition in the county court of Tazewell county to condemn a right of way for the construction, maintenance and operation of an electric transmission line across the farm of Jacob Naffziger in that county. The owner and other persons interested in the land were made defendants to the petition. The defendants demurred to the petition and moved to dismiss it. The demurrer was overruled and the motion was denied. The defendants filed a cross-petition asking that compensation for the damage to the remainder of the farm be ascertained and allowed. The jury awarded $12.50 for the land taken and $1137.50 for damages to the land not taken. The petitioner's motion for a new trial was denied and judgment was rendered on the verdict. The company prosecutes this appeal.

The farm in question is situated about six miles east of the court house in the city of Pekin, in Tazewell county. It comprises approximately eighty acres and its width from east to west is one-half its length from north to south. The soil is fertile; a house and other buildings are located in the northwest corner of the tract and, it is conceded, that farming constitutes the highest and best use to which the land and improvements may be devoted. The easement sought will be 250 feet wide, measured at right angles, and its northerly line will run from a point 720.8 feet north of the southwest corner of the farm, north 56 degrees, 20 minutes and 30 seconds east, 1562.1 feet to a point 1091.23 feet south of the northeast corner of the

farm. The easement will comprise within its boundaries 8.97 acres.

Two steel towers will be built on the strip of land to be subjected to the easement at points approximately 500 feet west of the east boundary of the farm. Each of these towers, at the surface of the ground, will be 31 feet one inch square, and at the foundation bottom, 36 feet eight and three-eighths inches square. The towers will be set with their centers on a north and south line, but their sides will be parallel and at right angles to the northerly and southerly boundaries of the easement. They will be supported upon concrete foundations descending from seven to nine feet below the surface of the ground. At a point 86 feet above the top of the foundation, each tower will support an arm, at right angles to the course of the easement, extending, on each of the two sides, 33 feet four inches beyond the center of the tower. From the center and ends of each cross-arm, insulators will be suspended and to the bottoms of these insulators the conductors or transmitting cables will be attached at a height of 75 feet above the ground. The two towers together will occupy about one-twenty-second of an acre at the surface of the ground and less than one-sixteenth of an acre at the foundation bottoms. The area within the boundaries of the easement, exclusive of the tower sites, will comprise approximately 8.92 acres.

The conductors will be about one and one-sixth inches in diameter and consist of fifty-four strands of aluminum wire woven around a cable of seven strands of steel wire. The spans in either direction from the two towers to be placed on the farm of the appellees will exceed 1125 feet and at no point will the conductors approach the surface of the ground nearer than 31 feet. Since three conductors will be supported by each tower and all placed in the same horizontal plane, the distance across the six conductors, at the points of suspension, will be 166⅔ feet. The neces-

sary sag, owing to the length of the spans, will require an additional 41⅔ feet on each side to allow for possible swings of the outside cables or conductors from their stationary positions. The sum of these requirements is 250 feet, the width of the proposed right of way.

The tower foundations will be cast, not upon the land of the appellees, but elsewhere, and then brought upon the right of way. The towers will be delivered in knock-down structural units and erected at the tower sites. The delivery of all materials and all of the appellant's operations will be confined to the right of way. If, after the lines have been completed, a cable should part or be severed, the operation of the circuit breakers will immediately stop the flow of energy. The transmission lines will be patrolled by an employee of the appellant who, for that purpose, will proceed afoot within the right of way not more often than once a week.

Thirty-two witnesses were called by the parties and of this number twenty-two testified with respect to the value of the land to be appropriated for the towers and the damage to result to the land within the boundaries of the easement from the erection, maintenance and operation of the transmission line. Nine of the appellant's witnesses fixed the value of the former ranging from $125 to $180, or an average of $155.55 per acre, and their estimates of the damage to the latter ranged from $35 to $64, or an average of $51.55 per acre. According to the testimony of the appellees' thirteen witnesses, the value of the land to be taken ranged from $210 to $250, or an average of $225.46 per acre, and the damage to the land, by its subjection to the easement, they fixed at $116 to $192, or an average, per acre, of $154.90. The jury's award of $12.50 for the land actually to be taken was at the rate of $200 per acre, and of $1137.50 for the damage to the land within the easement, exclusive of the tower sites, slightly exceeded $127.50 per acre.

The appellant urges a number of contentions for a reversal of the judgment. For the purposes of this review, they may be reduced to the following: First, that the amounts awarded by the jury are excessive and could have been reached only by ignoring the testimony of the witnesses called by the appellant whose qualifications and credibility were not challenged; second, that the verdict was partially based upon testimony respecting alleged elements of damage improper for consideration, and third, that the trial court, at the request of the appellees, gave erroneous and prejudicial instructions to the jury.

The damage to the area within the right of way sought by the appellant remaining after the appropriation of the sites for the two towers is the extent of the depreciation in the fair cash market value of that area for agricultural purposes caused by or owing to its subjection to the appellant's superior right to use it and the exercise of that right for the purposes stated in the petition. (*St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 Ill. 508; *Illinois Telegraph News Co.* v. *Meine,* 242 id. 568; *Illinois Power and Light Corp.* v. *Peterson,* 322 id. 342; *Super-Power Co.* v. *Sommers,* 352 id. 610). Such depreciation involves a physical disturbance of a right of property, and the law does not regard the fear of detriment or inconvenience, remote or contingent, as an element for which compensation may be allowed to the owner. The damage must be direct and proximate and not such as is merely possible or may be conceived by the imagination. *Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342; *Illinois Power and Light Corp.* v. *Cooper,* 322 id. 11; *Illinois Power and Light Corp.* v. *Talbott,* 321 id. 538.

In their estimates of damage, four of the witnesses called by the appellees allowed from $50 to $75 per acre for the mere presence of the towers and overhead conductors, apart from and in addition to compensation for the loss caused by their interference with the use of the

right of way for agricultural purposes. Although it was admitted that trees would not be planted and buildings, other than hog and brooder houses, would not be erected within the boundaries of the easement, yet three of the appellees' witnesses included in their estimates of damage from $20 to $25 per acre because the towers and conductors would exclude trees and buildings from the right of way. These items were not proper elements of damage and should have been excluded. *Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342; *Super-Power Co.* v. *Sommers,* 352 id. 610.

The third instruction given at the request of the appellees read as follows: "You are further instructed that if you believe, from the entire testimony, and from your inspection of the premises, that any witness has minimized or reduced the value of the land or the damages to the remainder of the land in the strip, on account of his interest in the suit, or his prejudice or want of knowledge or experience or truthfulness, then you have the right and it is your duty, to disregard the testimony of such witness in so far as you believe the same is unjustly minimized or reduced, either as to the value of the land taken or the damages to the remainder of the land in the strip." The court erred in giving this instruction for two reasons; first, because it authorized the jury to disregard the testimony of witnesses and second, because it applied only to witnesses who testified in behalf of the appellant. *Herrin and Southern Railroad Co.* v. *Nolte,* 243 Ill. 594; *Chicago, Ottawa and Peoria Railway Co.* v. *Rausch,* 245 id. 477; *Super-Power Co.* v. *Sommers,* 352 id. 610.

The judgment of the county court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*