(No. 34314.—

Forest Preserve District of Cook County, Appellee, *vs.*
John Krol, *et al.*, Appellants.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

POSANSKI, JOHANNSEN, KROHN & JACOBS, and JACK WALKER, both of Chicago, (ROMAN E. POSANSKI, and CHARLES D. SNEWIND, of counsel,) for appellants.

J. STERLING MORTIMER, VIRGIL C. LUTRELL, and ANTON S. MIKULA, all of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a condemnation judgment of the circuit court of Cook County which was entered upon a jury verdict awarding the appellants, John Krol and Helen Krol, $100,000 as just compensation for the property in question.

In asking this court to set aside the judgment and order a new trial, the appellants contend: (1) The verdict was inadequate and contrary to the manifest weight of the evi-

dence, (2) the court erred in permitting the appellee to introduce improper evidence, (3) the court erred in refusing evidence regarding the sale of certain property, (4) the giving of certain instructions tendered by the appellee constituted reversible error, and (5) the court erred in denying the appellants' motion for leave to file a cross petition.

The property here condemned for forest preserve purposes is a 105-acre tract situated approximately 25 miles southeast of Chicago and three fourths of a mile south of the village of Lansing in the southeastern part of Cook County. It is subject to the Cook County zoning ordinance and classified in the "F"-farming zone, which permits certain types of business enterprises and single-family dwellings on lots averaging 100-foot widths and having an area of not less than 20,000 square feet.

For more than 20 years the property has been used as an 18-hole public fee golf course. It has a remodeled club house and an underground sprinkling system under each green. A drainage stream runs through the northeast corner of the property, and about 12 acres immediately adjacent to the creek are overflowed during the rainy season. Several acres in the vicinity of the creek are wooded, and the balance of the property is flat, open field.

In the general vicinity are small homes, farms and three other golf courses. The village of Lansing, with an increasing population of 15,000, can only develop south and toward the property here involved. A two-room grade school is located nearby, and in neighboring communities are high schools and parochial schools. Bus transportation is available in Lansing, and railroad suburban services are available in nearby areas.

In 1936, the property was leased by the then owners to Michael and Tom Coyne and thereafter until January 1, 1951, operated by them as a golf course under the name "Lansing Airport Golf Course." On January 1, 1951, a new five-year lease was executed to Tom Coyne providing

a term rental of $18,850, payable in installments averaging $3770 a year. The lease provided. it could be canceled by the lessor at the end of any playing season if the property was sold. Coyne operated the premises through the 1951 season, and on December 17, 1951, they were sold to the appellants for $75,000. The property continued to be used as a golf course.

The second Coyne lease was admitted in evidence over objection, and the contract for the sale of the property to the appellants was also introduced in evidence over objection.

Three expert witnesses testified on valuation for the appellee: Grover C. Elmore, Floyd G. Dana, and Clem B. Mulholland. No question was raised as to their qualifications. Each stated that the highest and best use for the property as of September 3, 1954, the date the petition was filed, was for a golf course. Elmore fixed the value at $82,500, or $785 an acre. Dana fixed the value at $84,000, and Mulholland valued the property at $86,725, or $825 an acre.

The appellants called eight witnesses to testify as to valuation. Each said the highest and best use of the property was for subdivision purposes. Harry Sherrow fixed the value at $2000 an acre ($210,000), John W. Dykstra at $2500 an acre ($262,500), Walter W. Schultz at $2000 an acre, Victor S. Peters at $2500 an acre, William H. Winteroff at $2000 an acre, and James Dirst at $2500 an acre. Richard L. Hoekstra testified regarding his paying $41,500 in 1954 for a comparable 11½-acre tract to be used for subdivision purposes. Witness William J. Main was not permitted to give an opinion on valuation.

Over objection several of the appellants' valuation witnesses were cross-examined as to the cost of wells, septic tanks and streets that would be required for a subdivision in the particular zone. Information as to such costs was elicited from most of said witnesses. None of them had testified to such facts on direct examination.

Victor S. Peters, one of the witnesses for the appellants, was questioned about 40 acres located in the village limits of Lansing which he sold to Frank Swen for subdivision purposes. But the court refused to admit evidence of the sale price.

Edgar C. Griffith, a licensed civil engineer, testified for the appellants that he made percolation tests on the property and that it was suitable for septic tanks. He also said a disposal plant would cost $35,000 for the property if subdivided.

The appellee, in rebuttal, recalled Grover C. Elmore and Clem B. Mulholland who, over objection, testified as to costs in preparing the land for subdivision. Elmore said that about 140 lots could be obtained by subdividing, and the costs per lot would be as follows: surveying $50; roads $500; wells $500; septic tanks $375; title policy $50; or a total of $1475 per lot, exclusive of the cost of the land, advertising and sales cost. Mulholland also expressed his opinion regarding the various costs involved in subdividing the property, his total estimate coming to $219,144 for an estimated 138 lots.

Although the record does not expressly so state, the instructions given and arguments advanced indicate that the jury viewed the premises.

We consider the appellants' contentions in the order stated. First, they maintain the verdict was inadequate and not in accord with the manifest weight of the evidence. In this regard, it is asserted that the valuation witnesses for the appellee based their opinions on improper elements, had never been involved in the sale of golf courses, and did not give consideration to sales of other golf courses.

However, no objection was made to any of the valuation witnesses on their opinions of value. No questions were asked by the appellants' counsel as to separating the elements considered improper, nor was a motion made to strike the testimony based on claimed improper elements. The

opinions of the witnesses were not based alone on the alleged improper elements, but on familiarity with the particular property plus extensive experience in the immediate area as well as the entire county.

The jury had before it a full description of the property and knew the use to which it had been put. They heard all of the witnesses and observed their demeanor on the stand. They viewed the premises. All of the appellee's witnesses were competent, and the value to be accorded their testimony was a matter for the jury. (*Kankakee Park Dist.* v. *Heidenreich*, 328 Ill. 198). The $100,000 verdict was within the range of the testimony (a low of $82,500 to a high of $262,500, with a recent sales price of $75,000), and there is nothing to indicate they were influenced by prejudice or passion or that they made a clear and palpable mistake in so assessing just compensation. *Dept. of Public Works and Bldgs.* v. *Finks,* 10 Ill.2d 15.

Second, the appellants contend that the court erred in permitting the introduction of improper evidence. They first object to allowing the appellee's counsel to cross-examine the appellants' witnesses on the costs involved in subdividing property. The appellants were permitted to introduce a plat showing how the tract in question could be subdivided. On cross-examination, it was shown that septic tanks, individual wells, and eight-inch crushed stone base streets were required under the zoning regulations. None of this testimony was objected to. The only objection as to costs pertained to that of wells and streets, and this on the testimony of Main and Dykstra. In fact, the appellants themselves introduced testimony by an engineer regarding percolation tests he had conducted to demonstrate the suitability of the property for septic tanks.

The appellants' theory was that the highest and best use for the tract was for a subdivision. This being a question in issue, there was no error, based on the record in this case, in allowing cross-examination of their witnesses re-

garding the cost of improving the property for the sale of lots for dwelling purposes. *Forest Preserve Dist.* v. *Galt,* 412 Ill. 500.

The same reasoning applies to the rebuttal testimony offered by the appellee. It being proper to examine the appellants' witnesses as to the basis of their opinions on costs of subdividing, it was proper for the appellee to introduce evidence on its side as to such costs.

The appellants next object that the introduction in evidence of the lease was error. As noted, the valuation witnesses did not base their opinions solely upon the amount of rental set forth in the lease. Moreover, the testimony of these witnesses was not objected to, nor was there a motion to strike the testimony for failure to separate allegedly improper elements.

It is further contended that because the lease was canceled by a sale on December 17, 1951, it would have no probative value as of September 3, 1954. The property had been used as a golf course for over 20 years. The testimony of the appellee's witnesses was that the highest and best use was for a golf course. While the jury had the right to consider that the lease was canceled on the particular date and to take into account the particular reasons for cancellation, they still had the right to consider the lease on the question of value and use. (*City of Chicago* v. *Lord,* 276 Ill. 544.) The period of time was not too remote. The lease was ended January 1, 1952, when the appellants took possession, and the property continued to be utilized as a golf course thereafter. There is nothing to indicate that the specified rental was unreasonable or fictitious. Rentals received in good faith necessarily affect values, and in common transactions are considered by intending purchasers along with other elements in estimating market value. No good reason can be perceived why a jury should not have the benefit of such information. Any fact concerning the property which will fairly aid in arriving at its market

value is admissible, and rental received in good faith from the use of the property within a reasonable length of time is clearly one of the facts naturally contributing to that end. *Dept. of Public Works and Bldgs.* v. *Kirkendall,* 415 Ill. 214.

What has been said with respect to the lease is applicable to the sale of the property. At the time of sale the tract was being used for a golf course. The sale was, under the facts of record here, not too remote, and no error was committed in allowing evidence thereof. When a parcel of land is taken by eminent domain, the price the owner paid for it is a fact which may be considered in determining its value, provided the sale was recent and was a voluntary transaction, with no change in conditions or marked fluctuation in values having occurred since the sale. *Sanitary District of Chicago* v. *Corneau,* 257 Ill. 93; *Forest Preserve Dist.* v. *Hahn,* 341 Ill. 599.

Third, the appellants maintain that the trial court erred in rejecting testimony of their witness Main on the fair cash market value of the property and in rejecting evidence of a sale of property in the village of Lansing. Main testified that he had made an investigation of sales and purchases of property in the area of the tract in question. He stated he investigated different sales in the area with real-estate brokers by checking their files on real-estate contracts and by interviewing the purchasers and sellers to verify the information.

It is true that a witness who is familiar with the property involved in a condemnation proceeding and has knowledge of real-estate values in the vicinity is a competent witness, the extent or amount of his experience merely affecting the weight that is to be given his testimony. But it is also established that a witness must have actual and not hearsay knowledge of the other sales or other real-estate values. (*Trustees of Schools* v. *Kirane,* 5 Ill.2d 64.) Since the witness Main stated he made his appraisal on lists

of sales furnished by others, without testifying as to their advantages and disadvantages, the character of improvements, similarity and comparability of the properties, and other facts affecting value, it was not error for the court to refuse to permit him to express an opinion of value. In any event, the appellants had the benefit of seven other witnesses, and even if the evidence of Main was competent, the refusal to admit it could not, under the circumstances, constitute reversible error.

The appellants further contend that the court erred in rejecting evidence of a sale of property in the village of Lansing. Victor S. Peters testified that he sold a 40-acre tract in the village of Lansing to Frank Swen. But the evidence fell far short of the requirements in making preliminary proof that the land was similar in locality, quality, character, and usefulness to the tract in question, and that the sale was made recently and under circumstances that it was sold freely and in the open market. (*Kankakee Park Dist.* v. *Heidenreich,* 328 Ill. 198.) We do not believe the trial court abused the discretion vested in it by refusing to admit this evidence.

Fourth, the appellants complain of the instructions. They contend that the giving of appellee's instruction No. 8 was error because the allowance in evidence of the lease, previously discussed, was error and for the further reason that it gave undue prominence to a single element of value. The instruction told the jury that rental paid for the property was competent evidence, "and is to be considered, along with the other evidence in the case and your view of the premises, in arriving at the fair cash market value of the land being taken." This instruction told the jury that the rental could be considered along with other evidence in the case together with their view, and in our opinion did not give undue prominence to it. It could better have stated that the rental evidence should have been considered with *all* the

other evidence, including the jury's view, but this is not a fatal defect.

The appellee's instruction No. 4, which is assigned as error, does not appear to have been directly passed upon by this court in its exact form. It reads: "The court instructs the jury that if you believe from the evidence and your inspection of the premises, that any witness has magnified, or minimized, the value of the land in question, on account of his interest in the suit, or his prejudice or want of knowledge, or experience or truthfulness, it is your duty to disregard the evidence of such witness, insofar as the same is so unjustly magnified or minimized."

It has been held improper to give an instruction authorizing the jury to disregard testimony in which a witness has "minimized" the value of the land taken (*Super-Power Co*. v. *Naffziger*, 353 Ill. 441; *Herrin and Southern Railroad Co*. v. *Nolte*, 243 Ill. 594; *Super-Power Co*. v. *Sommers*, 352 Ill. 610,) or in which the jury is told to disregard testimony where a witness has "magnified" the value of land taken. (*East Peoria Sanitary Dist*. v. *Toledo, Peoria and Western Railroad*, 353 Ill. 296; *People ex rel. Dept. of Public Works and Bldgs*. v. *Hubbard*, 355 Ill. 196.) However, this court has held that where the instruction is framed to authorize the jury to disregard both unjust exaggeration and unjust minimization, it may properly be given. *County of Jackson* v. *Wayman*, 369 Ill. 123.

The appellants also object to instruction No. 13, which reads as follows: "The court instructs the jury that it is your duty to determine the amount of just compensation to be awarded to the owners of and parties interested in the land in question. 'Just compensation,' as used here, means such sum of money as will make the owners of and parties interested in said property whole, so that upon the receipt of such compensation they will not be poorer, or richer, by reason of their property being taken."

The import of the instruction is that "just compensation" is the amount of money necessary to put the property owner in as good a condition financially as he was with the ownership of the property. (*City of Chicago* v. *Koff*, 341 Ill. 520.) The appellants recognize this as the guide when they state in their brief: "The law of eminent domain contemplates that where property is taken, the owner is entitled to the amount of money necessary to put him in as good financial condition as he was with the ownership of the property at the time the petition was filed. Nothing short of that amount satisfies the constitutional requirements of just compensation. He must be left no richer or no poorer than he was at the time the petition was filed. (*City of Chicago* v. *Koff*, 341 Ill. 520.*" The instruction without the use of the word "richer" was approved in *West Chicago Park Commissioners* v. *Boal*, 232 Ill. 248.

The instructions taken as a whole properly instructed the jury, and we find no reversible error therein.

Fifth, error is assigned on the failure of the trial court to allow the appellants leave to file a cross petition for damages to land not taken. The petition for condemnation was filed on September 3, 1954, and 21 days later, on September 24, 1954, the landowners entered their appearance. More than a year later and on the day before the case went to trial, November 14, 1955, the appellants asked leave to file a cross petition for damages to land not taken. The court denied them such leave, and the trial went on as scheduled. Subsequently, however, a mistrial was declared, and the cause was reassigned. The appellants did nothing further regarding their cross petition until the first day of the second trial, May 15, 1956, at which time they renewed their motion. Again the court denied leave to file the cross petition, and the appellants claim error on this ruling.

The Illinois constitution requires the condemning authority to pay just compensation for damage to land not taken. (Art. II, section 13.) However, the landowner is

obliged to assert his right, and the "most convenient way to do this is by cross-petition." *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 413, 416.

Here the appellants did not assert their claim until over a year after the petition was filed and their appearance entered, and then only a day preceding the date set for trial. And after the mistrial they did not move to file a cross petition until six months later on the first day of the second trial. No reason is advanced for their lack of diligence, and we are of the opinion that the trial court did not, on this record, abuse its discretion in denying the leave. There is a strong indication that the appellants' petitions were utilized simply as delaying tactics. Their counsel stated that the tract of land not taken was devoted to farming purposes, and neither cross petition alleged that there was any unity of use whatever between it and the tract used for the golf course.

We believe the jury verdict was in accord with the law and the evidence and that the trial court did not commit prejudicial error.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*