LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellee, *v.* CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Defendants-Appellants.

Second District (1st Division) No. 74-417

Opinion filed February 20, 1976.

Norman J. Barry and Roger J. Guerin, both of Rothchild, Barry & Meyers, of Chicago, for appellants.

Donald T. Morrison, of Morrison & Nemanich, of Waukegan, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants appeal from a judgment of condemnation in which they were awarded $205,000 as just compensation in accordance with the jury verdict. They contend that various trial errors deprived them of a fair trial, that the verdict was not within the range of the evidence, that they were improperly refused permission to file a cross-petition for severance damages, and that no prejudice would result from ordering a new trial because a necessary party was not joined in the proceeding.

The condemnation petition was filed on February 16, 1973, and the case was tried in March, 1974. The subject property consists of 56.1 acres of land located on the north side of Route 60 (Town Line Road) about a quarter of a mile east of Route 21 (Milwaukee Avenue), south of the town of Libertyville. It is bounded on the west by the Des Plaines River with the property to the west, between the river and Route 21, being under the same ownership. The Hawthorn Shopping Center and a related development called New Century Town are located immediately northwest of the intersection of Routes 21 and 60. The entire condemned parcel is heavily wooded and contains no building improvements. Public sanitary sewer and water serve the area immediately west of Route 21 but do not serve the condemned property or the commonly owned property between the condemned property and Route 21. According to a topographical map introduced into evidence, approximately 28 acres of the 56.1 are within the flood plain of the Des Plaines River Valley. The applicable Lake County Zoning Ordinance contained a set of special regulations restricting the use of property in the flood plain.

George C. Duffy, a professional real estate appraiser, testified for the plaintiff. It was his opinion that as of February 16, 1973, the highest and best use of the subject property was to hold for future development for uses that would be permitted under the existing zoning regulations and that the fair cash market value of the property was $190,000. Plaintiff's other expert, William A. McCann, was of the same opinion as to the highest and best use of the property. He stated that in his opinion the fair cash market value of the property as of February 16, 1973, was $220,000. The evidence of comparable sales adduced by the plaintiff ranges from $4,800 to just under $5,000 an acre.

John F. Butler, Jr., testified for the defendants and gave his opinion that the highest and best use of the subject property was for 200,000 square foot home sites, a use permitted under current zoning. It was his opinion that the fair cash market value of the property as of the date of the filing of the petition to condemn was $436,340.

Defendants argue first that the conduct of plaintiff's counsel in allegedly bringing to the attention of the jury the wealth of the Cuneo

family, the beneficial owners of the property, and in allegedly and repeatedly referring to inadmissible evidence prejudiced the jury and prevented a fair trial. Defendants note in this connection that the jury, although confronted with several complicated exhibits, deliberated only 15 minutes and then reached a verdict in the amount requested by plaintiff.

On the question of whether plaintiff improperly prejudiced the jury by a reference to the owners' wealth, the following facts are considered: The defendants called Lawrence Bern to rebut testimony of one of the plaintiff's witnesses who had indicated that almost all of the condemned property was under water for a good portion of the year. On direct examination of Mr. Bern defendants' counsel established that Bern had been employed by a Mr. Cuneo as a farm manager for 12 years, that he had observed the condemned property at close range once or twice a week during that time, and that he resided at Hawthorn Mellody Farm. Mr. Bern described his home as being located on the "farm proper" and gave a description of its location which would place it on the west side of Route 21 between Route 60 and the E.J. & E. tracks. On cross-examination Mr. Bern was asked to step down from the stand and answer certain questions, utilizing an aerial photograph which had been admitted into evidence as Defendants' Exhibit No. 1. The questions and answers objected to by the defendants as being designed to improperly introduce the matter of the Cuneos' wealth into the proceedings are as follows:

"Q. * * * Now, you recognize the intersection of Milwaukee Avenue and Route 60 here in the lefthand corner of this picture?

A. Yes.

Q. Okay, and you live between that intersection and the EJ&E tracks, which runs along this line that I am putting the pointer on here now, across the upper third of the picture, right?

A. That's correct.

Q. You live in that house there?

A. No, sir, I don't.

Q. Who lives in that house?

[Defendants' Counsel]: I object, Your Honor.

THE COURT: I will sustain the objection, you may interrogate him as to anything that he testified to on direct examination.

Q. [By Plaintiff's Counsel]: This is the Hawthorn Mellody farm, as I understand it, is that right?

A. No, that's extensive; it goes all the way over to Butterfield Road here.

Q. Where is Butterfield Road?

A. I can't determine that on the map.

[Defendants' Counsel]: I object to this line of inquiry, Your Honor, it has no relevancy.

\* \* \*

[Plaintiff's Counsel]: I would like to connect it up, Your Honor.

THE COURT: Please confine your questions as to what he testified to about the land itself."

After establishing that Mr. Bern had observed the condemned property from time to time while supervising farming operations being conducted on the parcel of property located immediately west of the condemned property, plaintiff's counsel asked the following questions:

"Q. And you say there is more area than just this little piece that you supervise?

A. Oh, yes.

Q. How many acres in addition to that do you supervise?

[Defendants' Counsel]: I object, Your Honor.

THE COURT: Objection is sustained.

[Plaintiff's Counsel]: Okay, I have no further questions."

■■ Reference to the financial status of the parties may constitute reversible error. (*Panos v. McMahon,* 23 Ill. App. 3d 776, 786 (1974). *Cf. Panelle v. Chicago Transit Authority,* 31 Ill. 2d 560 (1964), *Hickey v. Chicago Transit Authority,* 52 Ill. App. 2d 132, 139-140 (1964), *Wellner v. New York Life Insurance Co.,* 331 Ill. App. 360, 366 (1947).) However, the language complained of must be reasonably understood to refer to the financial status of one of the parties (*Delany v. Badame,* 49 Ill. 2d 168, 177-78 (1971)) and must actually prejudice the cause of the complaining party. (*Dupay v. New York Central R.R. Co.,* 110 Ill. App. 2d 146, 154-55 (1969).) The defendants contend that in utilizing the aerial photograph to establish where the witness Bern lived, plaintiff's counsel pointed to a large mansion far from the condemned property which plaintiff's counsel knew to be the Cuneo home. The defendants also contend that the other two lines of questioning to which they objected were designed to emphasize the vastness of the Cuneo family's land holdings in the area and that the questions themselves accomplished that purpose even though objections were sustained before they were answered.

An examination of the entire cross-examination supports plaintiff's claim that the cross-examination was designed to undermine the witness's claim that he had observed the property regularly and frequently over a period of 12 years and had seen no substantial flooding by demonstrating that the witness lived some distance from the condemned property, could not see the entire property very clearly due to the

thickness of the woods, and did not have much opportunity to walk around in the woods due to the substantial nature of his other responsibilities.

■■ While the question "Who lives in that house" appears to have no proper and relevant purpose, we cannot agree with defendants' argument that the question itself introduced the matter of Cuneos' wealth into the proceedings and created prejudice to the extent that a new trial is mandated. The question is ambiguous. We do not believe that it could only be understood as a reference to the financial status of one of the parties. (*Cf. Panos v. McMahon*, 23 Ill. App. 3d 776, 786-787 (1974).) In addition, the objection to the question was promptly sustained by the court, and the question was not answered.

Defendants also argue that plaintiff's counsel prejudiced the jury by interrupting defense counsel's closing argument with an objection in which plaintiff's counsel offered to introduce a document which had not been previously offered. It appears that during plaintiff's counsel's initial closing argument, he stated:

"Duffy and McCann put their opinions in writing, sent them to me, I sent those opinions of value in writing to [defendants' counsel], who of course made great use of them in the course of this trial; but Mr. Butler didn't do that. He didn't make an appraisal report and send it to [defendants' counsel], who couldn't send it to me. That's [*sic*] wasn't done, so I think that is something that can be considered. Mr. Butler said he was on this property back last September, but we couldn't get any information with regard to what his opinion of value was until last Wednesday, and that by way of a deposition.

[Defendants' Counsel]: Object, Your Honor, that is a misstatement. That was a week ago Wednesday that they had the deposition.

[Plaintiff's Counsel]: All right, a week ago.

[Defendants' Counsel]: 100 pages of Mr. Butler.

THE COURT: Very well.

[Plaintiff's Counsel]: Now, there has to be, I think, some consideration given by you as a jury to those circumstances. * * *"

During the defendants' closing argument the following exchange occurred:

"[By Defendants' Counsel]: But what happened with Mr. Butler? Now, counsel has pretended that Mr. Butler was a great big mystery to him when Mr. Butler got on the witness stand. They deposed Mr. Butler—

[Plaintiff's Counsel]: I am objecting to any reference to that

unless the whole deposition is admitted in evidence, and I will offer it in evidence right now.

THE COURT: The objection is overruled."

The defendants contend that plaintiff's counsel knew that the effect of his objection could only be to create an erroneous impression among the jurors that the deposition differed from Butler's oral testimony, or that defendants were unilaterally withholding information from the jurors which would be adverse to the defendants. The plaintiff's counsel answers that he believed defendants' counsel was about to discuss the contents of a document which was not in evidence. The plaintiff argues that he was therefore merely interposing a timely objection to an improper line of argument. The plaintiff's counsel also contends that he felt that he had to indicate his willingness to offer the entire document in order to keep the jury from thinking the plaintiff had something to hide.

■■ "In arguing a case to a jury, counsel are privileged to discuss the evidence introduced and all reasonable inferences that may be drawn therefrom  *  *  *." (*Forest Preserve District v. Alton R.R. Co.*, 391 Ill. 230, 236 (1945).) It is also true that counsel should not offer into evidence something which has already been held inadmissible by the court (*Vasic v. Chicago Transit Authority*, 33 Ill. App. 2d 11, 11-o (1961)) and that in closing argument an attorney should not argue that if evidence which the court has held inadmissible had been admitted, it would have been adverse to the opposing party. (*Forest Preserve District v. Alton R.R. Co.; Reinmueller v. Chicago Motor Coach Co.*, 341 Ill. App. 178, 184 (1950).) It is apparent that the deposition was not in evidence and could not have been properly offered.

■■ Under the circumstances the argument of plaintiff's counsel that he was attempting to prevent defendants' counsel from delving into the contents of a document not in evidence is reasonable. In addition, the trial court again quickly overruled the plaintiff's objection, and we cannot find from the whole record that the conduct prejudiced the jury against the defendants. See *Bruske v. Arnold*, 44 Ill. 2d 132, 139 (1969).

Defendants' counsel also argues that counsel for the plaintiff improperly influenced the jury by implying that the defendants had not introduced the entire appraisal report of the plaintiff's witness Duffy because it would be unfavorable to them. Duffy had stated in his report that the highest and best use for the condemned property would be "to hold for future use for a Planned Development such as an Office Park or Institutional Use." This reference appeared on one page of the appraisal report and was used by the defendants' counsel to impeach Duffy's testimony at trial that the highest and best use of the condemned

property "is to hold for future development, for uses that would be permitted under the existing zoning regulations." When confronted with the statement in the appraisal report, Duffy stated at trial that there should have been a comma between Office and Park. Suffice it to say that there is very little sense to be found in Duffy's statement that there should have been a comma between Office and Park. Defendants' counsel strenuously emphasized in closing argument that because of the dispute about the comma, Duffy was not a credible witness and that his valuation was low considering that he had originally stated that the highest and best use would be for an office park (presumably a planned development akin to an industrial park.) In rebuttal, plaintiff's counsel used an allusion to the conduct of an octopus in releasing a cloud of ink into the water and attempting to escape under its cover. He asked the jury to consider the question of the omission of the comma in the light of Duffy's testimony taken as a whole, which he argued was consistent with the uses permitted in the zoning classification, and then said:

> "Don't take—Rip one page out of his appraisal report, find one phrase that omits one bit of punctuation. There is no contention that Mr. Duffy's conclusion of value in that appraisal report wasn't exactly what he testified to here, or that anything else that he said in that long appraisal report wasn't the fact, or as near as he could determine it to be a fact. Most important of all, there is no connection between the lack of that comma and his testimony here. No connection. Where is the logic? Is his value wrong because he forgot that comma? Maybe so, but if so I haven't been told about it, I haven't heard how his value is wrong. I have heard he omitted a comma, okay, he omitted a comma. I made a mistake once myself, as I recall. Maybe you people have each made one. Now, there is no—*There was no attempt made to give you his whole report, just one page. That's all, one page, one comma, one little bit of punctuation which you have to consider by itself, not in connection with this whole report, and not in connection with his testimony here. That's ink from an octopus.*"
> (Emphasis added.)

The italicized language complained of could be fairly construed as a legitimate response to defendants' argument which emphasized the importance of the missing comma as a ground for the invitation to the jury to disregard all of Duffy's testimony. We find *Bulleri v. Chicago Transit Authority*, 41 Ill. App. 2d 95, 102-104 (1963), cited by defendants, factually distinguishable.

On the whole record it does not appear to us that the trial judge has abused his discretion in finding that the jury was not misled by

improper remarks of counsel. We will therefore not set aside the verdict on this ground.

Defendants also argue that the court erred in denying their motion to strike the entire testimony of plaintiff's expert Duffy. The corollary argument is made that in the absence of Duffy's testimony, the verdict would not fall within the range of the testimony and should therefore be set aside (see *Central Illinois Public Service Co. v. Rider*, 12 Ill. 2d 326, 329 (1957)). Defendants reason that the opinion which Duffy gave was not shown to be based on sufficient physical evidence to provide the data needed to form the conclusion (*cf. Craft v. Acord*, 20 Ill. App. 3d 231, 236 (1974)). In this connection defendants note that Duffy admitted that he had not done any soil tests or run costs on forced mains, lift stations, and development. Defendants also question whether Duffy was familiar with the land in view of his admission that he had not observed the land with any regularity. They contend that his evaluation was influenced by a belief that the land was under water most of the time which had no support in the evidence and was contradictory to the admitted fact that the property contained many trees which do not usually grow in flooded areas.

■■ The determination of the competency of an expert witness is within the discretion of the trial court. *County of Cook v. Holland*, 3 Ill. 2d 36, 47 (1954). See also *Department of Public Works & Buildings v. Jensen*, 11 Ill. App. 3d 93, 97 (1973); *Forest Preserve District v. Harris Trust & Savings Bank*, 108 Ill. App. 2d 65, 72 (1969).

■■ Duffy limited his consideration of soil conditions to actual field observation and published soil condition reports of governmental bodies and testified to actual experience in developing, building and subdividing. His general qualifications as an appraiser were not seriously questioned, and he was shown to have been sufficiently qualified to consider soil conditions and development costs from his experience. In our view Duffy was a competent witness. The weight of his testimony becomes a jury question.

We also find no merit in defendants' argument that they were surprised and prejudiced by Mr. Duffy's attempt to insert the comma between "Office and Park." It appears that defendants' counsel was aware that both Duffy and McCann, the other expert witness for the plaintiff, would testify that the highest and best use of the property was to hold it for future development consistent with the current zoning. The affair of the allegedly missing comma could have minimal bearing on defense counsel's ability to effectively cross-examine the witness.

Defendants' argument that the trial court abused its discretion in ruling upon comparable sales is also not meritorious. The trial judge

has considerable discretion in ruling on the admission of such evidence. The rule has often been stated that "Where * * * a reasonable basis for comparison exists, the dissimilarities, which are disclosed to the jury, affect the weight and value of the testimony rather than its competency." (*Forest Preserve District v. Kercher*, 394 Ill. 11, 20 (1946). See also *City of Evanston v. Piotrowicz*, 20 Ill. 2d 512, 522 (1960).) Here there appeared to be sufficient similarities to show a reasonable basis for comparison. Defendants emphasize the dissimilarities. They point out that one of the properties was much farther from sewer and water than the condemned property and that in both, the land across which sewer and water lines would have to be extended was owned by strangers to the sale. Defendants also note the absence of testimony as to whether either of the other two properties was or was not in the flood plain or flood table. In addition, defendants allege that neither of the compared properties were within the sphere of influence of the Hawthorn Shopping Center. On the record, it appears that the trial judge found to the contrary and ruled that any difference in the extent of the influence on the value of condemned property and the other parcels within the sphere, but further away from the development than the condemned land, could be considered by the jury. We find that these are dissimilarities which affect the weight and value of the evidence rather than its admissibility.

■■ We next consider defendants' contention that the court improperly denied their motion to file a cross-petition alleging damage to the property west of the river. The motion to file the cross-petition was presented on March 20, 1974, six days before the date set for the beginning of the trial and more than a year after the filing of the condemnation petition. The petition did not contain any allegation of the amount of damages. Interrogatories had been filed on December 19, 1973, in which plaintiff had asked if the defendants claimed any damage to the remaining property. The answer to the interrogatories was not filed until the date of the presentment of the motion to file the cross-petition and informed the plaintiff that a preliminary estimate of damage to the remainder was about $1 million. The motion was denied by the motion judge on the basis that it "is not timely and would delay the trial of this cause, and also does not appear to be proper as a matter of law because of lack of contiguity." The motion was renewed before the trial judge on March 26, 1974, and again was denied. Under the circumstances the denial of the motion to file the cross-petition for lack of timeliness was not an abuse of discretion. See *Forest Preserve District v. Krol*, 12 Ill. 2d 139, 151 (1957).

In this view we do not reach the question of whether the judge was

correct in his additional ruling that the remaining property was not contiguous as a matter of law. We do note, however, that the cross-petition did not allege unity of use and that the answer to interrogatories simply indicated that the entire tract was vacant.

Next, defendants argue that a new trial would not prejudice the plaintiff since a further trial would be necessary to assess the damage to the interest of Robert A. Sharpe, a successor trustee who not joined as a defendant.

■■ The original petition to condemn named as defendants the successor trustees under the declaration of trust executed by John F. Cuneo individually on August 12, 1935. The successor trustees were named. They included the Continental Illinois National Bank & Trust Company of Chicago and four individuals. Unascertained acting trustees were made parties defendant to the action as "unknown owners," and publication was made. The defendants' answers to plaintiff's interrogatories filed on March 20, 1974, and the motion to dismiss one of the named trustees as a party, indicated that one of the trustees had resigned in 1970 and had been replaced by Robert A. Sharpe. A properly joined defendant may not claim as error the fact that other persons having an interest in the condemned property are not made defendants. (See *South Park Commissioners v. Livingston,* 344 Ill. 368, 372 (1931).) We conclude, therefore, that defendants are precluded from effectively urging that we order a new trial on the basis of this argument.

Finally, defendants argue that taking into consideration the record as a whole, they are entitled to a reversal because the verdict was the result of passion, prejudice, or clear mistake.

■■ It is clear that where an award is made by a jury in an eminent domain proceeding in which the evidence is conflicting and the jury views the property and fixes the amount of compensation within the range of the evidence, the verdict will not be disturbed unless there has been a clear and palpable mistake or a showing that the verdict was the result of passion or prejudice. (See, *e.g., Trustees of Schools v. Schroeder,* 23 Ill. 2d 74, 79 (1961).) Here the jury viewed the property and the verdict was within the range of the evidence. The fact that it was only slightly larger than the valuation of plaintiff's expert Duffy and only slightly less than the valuation of plaintiff's second expert McCann does not establish that there has been a clear and palpable mistake. (*Department of Public Works & Buildings v. Finks,* 10 Ill. 2d 15, 19 (1956).) On this record we are not justified in interfering with the award made by a jury which viewed the premises and returned a verdict within the range of the evidence. (See *Department of Public Works &*

*Buildings v. Jensen*, 11 Ill. App. 3d 93, 99; *Trustees of Schools v. Schroeder*, 23 Ill. 2d 74, 78-79; *Waukegan Park District v. First National Bank*, 22 Ill. 2d 238, 247 (1961).) The judgment is therefore affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.