THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellee, *v.* WILLIAM F. BYFORD *et al.*, Defendants.—(THE EXCHANGE NATIONAL BANK OF CHICAGO *et al.*, Defendants-Appellants.)

Second District   No. 76-333

Opinion filed May 8, 1978.

John R. Mackay, of Wheaton, for appellants.

William J. Scott, Attorney General, of Chicago (Frank S. Righeimer, Jr., and Frank R. Martin, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

This is an appeal from a jury's determination of just compensation to be paid to defendants, Exchange National Bank of Chicago, as trustee, and G. Dana Tokoph and Alice K. Tokoph, who are the owners of the beneficial interest in that trust (Owners) for the taking of land by the

Department of Public Works and Buildings of the State of Illinois (State) for use in construction of Federal Aid Route 61 in Du Page County.

The petition to condemn was filed by the State on January 12, 1971, to acquire 10.37 acres of a 57.26-acre tract of land owned by defendants. The Owners made no claim for damages to the remainder and the jury returned a verdict finding just compensation to be $99,738.66 or $9,618 an acre for the land taken. The Owners appeal, contending the trial court erred in admitting over their objection evidence of certain comparable sales offered by the State and that the verdict and judgment entered thereon was contrary to the manifest weight of the evidence.

The subject property is located in an unincorporated area of Du Page County on the east side of Swift Road, south of Lake Street and north of Army Trail Road. A 33-foot-wide gas pipeline easement containing two pipes for petroleum products runs in an east-west direction through the northern third of the property. A further description of the property and its surroundings is seen in our opinion in *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 334 N.E.2d 810, which was concerned with the condemnation of adjoining land to the west of the subject property. At the time of the taking by the State on January 12, 1971, all of the 57.26-acre tract owned by defendants was vacant, unimproved land. It was zoned R-3 under the county zoning ordinance, a classification permitting single-family residences on half-acre lots, and had no on-site sewer or water facilities although service lines were then located at one border of the tract some 600 feet from the subject property taken by the State. In August 1970, the Owners had sought to have their property annexed to the adjoining village of Addison and there zoned for multiple-family use, but their petition was rejected by the Addison Plan Commission.

James J. Curtis, Jr., a professional real estate appraiser called by petitioner, testified it was his opinion that on January 12, 1971, the highest and best use of the property taken was for single family residential purposes. He considered its location, zoning, the use of surrounding properties, availability of sewer and water and the demand for multiple family zoned property in the area, noting that about 200 acres of land zoned for that purpose were still vacant in the vicinity. He valued the subject property at $80,866 or $7,800 per acre. James C. Dunn, another professional real estate appraiser, was also called by petitioner and, after considering the same criteria referred to by Curtis, expressed his opinion that the highest and best use of the property was for single-family residential. He stated its value to be $83,000 or $8,000 an acre. The State also submitted evidence of certain sales of comparable property in the area, to which the Owners do not now object, in which the price paid per acre was, respectively, $5,800 and $5,000.

The Owners called Roy R. Krueger, also a professional real estate appraiser, who testified that the highest and best use of the property was for multiple-family purposes with annexation to and zoning by the adjoining village of Addison. He considered there was a reasonable probability of it being annexed and rezoned noting that contiguous properties to the west, south and east of the subject property had already done so at the time of the taking and had, in part, received zoning permitting multiple-family use. He also considered that sewer and water utilities were available and could be extended to the property at a cost of approximately $12,000. In arriving at his opinion that the value of the property taken was $313,000 or $30,000 an acre, Krueger also considered the sales of comparable property for $53,203 and $48,300 an acre which had been allowed in evidence by the trial court over the State's objection that those sales had occurred more than two years after the petition to condemn the subject property was filed without any showing that those sales had not been affected by the condemnation proceeding or the result thereof. See *Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1976), 39 Ill. App. 3d 8, 13, 349 N.E.2d 467, 472.

While certain sales of comparable property in the vicinity were introduced by petitioner and considered by the jury to which the Owners do not now object, they contend that three such "comparable" sales were erroneously admitted by the trial court. Two of these transactions involved the purchase and subsequent resale of a 40-acre tract of land lying immediately to the southeast of the subject property. It was purchased in April 1968 by Aldan, Inc., an Illinois corporation of which G. Dana Tokoph was president, director and stockholder, for $190,000 or $4,750 per acre. It was then vacant, undeveloped land zoned for single-family use and located within the village of Addison; it had no on-site sewer or water services. In December 1968, Aldan, Inc., sold the property to Caron Construction Company for $350,000 or $8,750 an acre. In their initial brief the Owners contended it was error for the trial court to admit evidence of both sales of this tract in that sewer and water were not available to it at the first sale but that it was part of the village of Addison with such availability at the second sale. In their reply brief, however, the Owners concede there was no capacity in the Addison sewer treatment plant for additional facilities in December 1968 when the tract was last sold. They now argue that it was error to admit these sales as comparable to the subject property without evidence showing the cost of bringing these utilities to that tract of land when they were available to the subject property when taken by the State.

The Owners also contend the trial court erred in admitting evidence of their purchase of the tract of land of which the subject property is a part

as a comparable sale for the jury to consider in determining the present value of the portion taken by the State. The Owners contracted to purchase the 57.26-acre tract in April 1969 from the Swift Land Development Company at a price of $6,500 an acre. At that time, and also in December 1969 when the Owners took title to it, the property was in essentially the same unimproved condition as we have described on January 12, 1971, when the 10.37-acre strip was taken by the State. One difference, however, deemed vitally important by the Owners, was that when they purchased the property sewer and water services were located approximately 1½ miles away and further expansion of the sewer main in the Village of Addison had been proscribed by the Environmental Protection Agency because of the limited capacity of the Addison sewer plant, a condition which the Owners suggest had been relieved by the time the State acquired the 10.37-acre portion of its property. The Owners argue, therefore, that because sewer and water were available to the property at the time of its taking by the State that the land without such availability at the time they purchased it was not comparable and evidence of their purchase price also should not have been admitted without evidence of the cost of providing sewer and water services to the property.

■■■ Evidence of voluntary sales of similar property occurring in the vicinity is a proper aid in determining the value of property taken (*Department of Public Works & Buildings v. Drobnick* (1958), 14 Ill. 2d 28, 150 N.E.2d 593) and the trial court has considerable discretion in ruling on the admission of such evidence for comparison purposes (*Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 950-51, 343 N.E.2d 6, 13). If there is a reasonable basis in the evidence for admission of a comparable sale, the determination of the trial court will be upheld. (*Morton Grove Park District v. American National Bank & Trust Co.* (1976), 39 Ill. App. 3d 426, 436, 350 N.E.2d 149, 158.) While the party offering a purported comparable sale must first show that the land sold was similar in locality and character to the land to be acquired (*Forest Preserve District v. Chilvers* (1931), 344 Ill. 573, 577, 176 N.E. 720, 721), there is no absolute standard to be applied by the court and there is necessarily room for some differences between the compared properties which can be recognized by the court in considering the admissibility of such evidence and which will also be taken into account by the jury in considering that evidence. As stated in *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 522, 170 N.E.2d 569, 575,

> "This court, moreover, has recognized that 'similar' does not mean 'identical,' but means having a resemblance, and that property may be similar for purposes of fruitful comparison, though each

possesses various points of difference. [Citations.] Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. [Citations.]"

In applying these rules to the property sales submitted by the State and objected to by the Owners which we have described, it is apparent those properties were located at the same place as the subject property and that their general characteristics, zoning, absence of improvements and lack of on-site sewer and water facilities were comparable to that of the subject property when taken by the State. The primary objection of the Owners to the admissibility of these three sales relates to the unavailability of sewer and water to the properties at the time of those sales and the Owners' contention that those services were available to the subject property when taken by the State. While there was substantial dispute as to the matter, there was evidence that the Addison sewer plant had capacity to service the subject property on January 12, 1971, and, although these services were then still 600 feet from the property, that they could be brought to it at a cost of $12,000.

The Owners contend that the availability or unavailability of sewer and water services alone constitutes such a substantial dissimilarity between the subject property and the purported comparable properties as to require exclusion of evidence of the sales in the absence of evidence by the State of the cost of providing these utilities to the purported comparable properties. They rely upon *Forest Preserve District v. Harris Trust & Savings Bank* (1969), 108 Ill. App. 2d 65, 247 N.E.2d 188, where the subject property was a large tract of land capable of supporting its own sewer and water facilities while the excluded "comparable" sales involved properties which had no access to or capability to support such facilities. In *Harris* the most significant single factor in the area contributing to the value of land was the availability of these services and the cost of providing them to the property. In that circumstance it was held that purported comparable sales were properly excluded absent some evidence of the cost of compensating for that substantial difference between the properties. The Owners argue here that the State was first obliged to produce evidence of the cost of furnishing these utilities to the property offered as comparable and it was error to admit evidence of those sales without such a showing.

■■ We do not believe the unique factual situation present in *Harris* compares to that seen in the present case. While there are some differences between the subject property and those to which it was compared the similarities are far more apparent. The Owners' emphasis

of the single feature of the availability of the utilities does not, under the circumstances of this case, require exclusion of the comparable sales, but any dissimilarity in that regard would affect the weight and value of the evidence rather than its admissibility. (See *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 950-51, 343 N.E.2d 6, 13; *Department of Public Works & Buildings v. American National Bank & Trust Co.* (1976), 36 Ill. App. 3d 439, 451, 343 N.E.2d 686, 695.) This court recently considered a similar issue in *Department of Conservation v. Kyes* (1978), 57 Ill. App. 3d 563, 574, 373 N.E.2d 304, 311-12, where the State urged that evidence of the value of the fixtures, name and goodwill was required to make a sale comparable to the value of the subject property, stating:

"The State has not cited, and we are not aware of any case which requires the witnesses to testify to specific 'adjustments' for all the differences between the sale offered as a comparable and the subject property. Indeed, we believe that testimony applying dollar amounts to all of the differences and then adding or subtracting would be extremely likely to confuse or mislead the jury. Testimony concerning the general differences is, however, appropriate, and it was received in this case."

We take a similar view of the evidence here as it relates to the comparable sales admitted by the trial court. With regard to the Aldan, Inc., purchase of the 40-acre tract for $4,750 an acre in April 1968 and its sale eight months later for $8,750 an acre, the jury was also advised that Aldan, Inc., as seller, agreed in the contract with its purchaser to pay the cost of bringing sewer and water to the property. It would appear to us that those sales reflect the value of the property with and without sewer and water services and would give the jury a useful insight into the value of the subject property with such services. By the same token the jury was correctly permitted to consider the price paid by the Owners for the subject property. While there were zoning changes in the surrounding property between its purchase and the time it was taken wherein multiple-family, commercial and industrial zoning had been granted, the evidence is also that, despite the zoning changes, substantially all the surrounding property was also vacant and unimproved on the valuation date of January 12, 1971, and, in fact, was still undeveloped some five years later when viewed by the jury. The jury had evidence before it which permitted it to consider any dissimilarities as well as likenesses between the subject property and the comparable sales to which the Owners object and we find they were properly admitted in evidence. See *Forest Preserve District v. Folta* (1941), 377 Ill. 158, 162, 36 N.E.2d 264, 266.

The Owners finally contend that the verdict was contrary to the manifest weight of the evidence and clearly in error.

■■ ■ It is well established that where a jury in an eminent domain proceeding has viewed the subject property and fixed just compensation for its taking to be in an amount within the range of the evidence, the verdict will not be disturbed absent a showing the verdict was a result of prejudice or a clear and palpable mistake. (*Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 131, 306 N.E.2d 1, 7, *cert. denied* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072; *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 952, 343 N.E.2d 6, 14.) This rule will apply even where the verdict substantially agrees with the value placed on the property by petitioners' witnesses and appears to disregard the owner's witnesses. (*Department of Public Works & Buildings v. Christensen* (1962), 25 Ill. 2d 273, 276-77, 184 N.E.2d 884, 886.) The State's valuation witnesses testified to a range of $7,800 to $8,000 an acre and its comparable sales demonstrated a value range of $5,000 to $8,750 an acre. The Owners' witness testified its value was $30,000 an acre while comparable sales offered by the Owners were for $48,300 and $53,203 an acre. The jury viewed the property and its verdict of $99,738.66 or $9,618 an acre was within the range of the testimony. The jury was in a position to consider the weight to be given to the conflicting testimony and make a realistic assessment of just compensation to be awarded to the Owners. There was no indication the jury was influenced by either prejudice or mistake. See *Forest Preserve District v. Krol* (1957), 12 Ill. 2d 139, 145, 145 N.E.2d 599, 602.

On this record we will not interfere with the award made by the jury. The judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and BOYLE, J., concur.