DONALD W. FRANKLIN, Plaintiff-Appellee, *v.* WILLIAM RANDOLPH *et al.*, Defendants-Appellants.

(No. 11281;

Fourth District—February 25, 1971.

802

Jack E. Horsley and Richard F. Record, Jr., of Craig and Craig, of Mattoon, for appellants.

Ralph D. Glenn of Glenn & Logue, of Mattoon, for appellee.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Plaintiff recovered a judgment for $50,000 for injuries sustained in a truck-car collision. Judgment was entered on the verdict and post-trial motions for judgment n.o.v. and for new trial were denied. Four points are presented for review. (1) That the plaintiff was guilty of contributory negligence as a matter of law and the trial court should have directed a verdict, (2) that the trial court ruled incorrectly on certain objections to evidence, (3) that the jury was improperly instructed, and (4) that the verdict was excessive and the result of passion and prejudice.

■■ The defendant, Randolph, aged seventy-eight, was driving the defendant Driscoll's truck loaded with 230 bushels of wheat in an easterly direction on an oil road approaching SBI-Route 130. Plaintiff was traveling south on Route 130. At the intersection between the two roads there was a stop sign controlling westbound traffic. This stop sign was seventeen or eighteen feet back from the edge of the hard road. The defendant testified he made the stop at the stop sign, came on down to the hard road and made a second stop. He saw traffic on the road coming from the south and traffic coming from the north at quite some distance and waited. He made the second stop at the edge of the hard road and decided he had time to make it across and to turn towards his left or to the north. He didn't make it. Plaintiff and the driver of the car following him testified they did not see the defendant stop at the edge of the hard road. In fact, the plaintiff testified that he "put my foot on the brake, and then realizing that he wasn't stopping, I slammed the brake on and the wheels locked up". The plaintiff likewise testified that he was not across the center line in the northbound lane at any time although he had testified in deposition that his car might have gotten one foot over the black line. The plaintiff also testified that he was traveling about 60 mph and observed the truck for the first time when

he was about 200 feet from the intersection. He testified as above stated as to his activities and laid down 70 feet of skid marks. The defendant testified that plaintiff was going 80-90 mph and that plaintiff's car weaved from the east to the west side of the highway and was at one time apparently up on one wheel. The skid marks do not bear out such gyrations of plaintiff's automobile. Likewise the plaintiff and the driver of the car following him testified that the defendant made no stop at the edge of the pavement. In like manner, the sheriff of the county testified that he had a conversation with Randolph in which the defendant stated that he was pulling onto Route 130, attempting to go north and that he had failed to see the car coming from the north when the accident occurred. Randolph denied making this statement. The field in the northwest corner of this intersection was planted to corn which was some three or four feet high, but visibility was apparently good for almost a mile. The defendant testified that at the time of the impact all four wheels of his truck were completely in the northbound lane, but after the impact his truck was moved back about four feet and the left-rear wheels were setting on the center line of the highway. The defendant Driscoll testified he was the owner of the truck and went to the scene. He further testified that his truck and the plaintiff's car were right in the middle of the road and indicated they filled nearly the whole pavement at the time he arrived. The witness, Morris, who was following the plaintiff, testified he did not stop as two other cars had stopped and that he had to get off the pavement on the west side to get around the car and the truck. The testimony thus given is sufficient to indicate that this is not an intersection case where a court can say as a matter of law where liability rests. The evidence is in conflict and under such circumstances it is not for a court but for a jury to pick the wheat from the chaff. This they have done and we are not persuaded from any of the cases cited that we should interfere. Taking Randolph's testimony standing alone then unquestionably the plaintiff was guilty of contributory negligence. Taking the plaintiff's testimony standing alone then clearly the defendant was guilty of negligence. Taking the testimony of both, they cannot be molded together into a set of facts to which any sound rule of legal liability can be applied. Basic facts are in sharp conflict. Under such circumstances neither a motion for directed verdict nor a motion for judgment n.o.v. was apropos. They portray a typical setting for a jury determination.

■■■ Defendant cites our *Waldron v. Hardwick*, 99 Ill.App.2d 36, 240 N.E.2d 772. In that case the plaintiff testified that her vision was unobstructed, that she did not see any vehicle as she approached the point of collision and that she first saw the defendant's car with its front end

on the highway about a car length ahead of her and that the collision then occurred. It is patent from a statement of those facts that that case announced no rule of law that is applicable to the factual situation here presented. We are cited intersection collision cases where neither road was a preferential highway; where both roads were preferential highways; where the car coming from the right had the right-of-way over the one entering the intersection, and a host of others. It would extend this opinion to unconscionable lengths to distinguish all of such cases and they are distinguishable. The rule announced in *Pedrick v. Peoria and Eastern Railroad Company*, 37 Ill.2d 494, 229 N.E.2d 504, and *Keen v. Davis*, 38 Ill.2d 280, 230 N.E.2d 859, that verdicts ought not be directed and judgment notwithstanding the verdict ought not be entered except in those cases in which all of the evidence viewed in its aspect most favorable to the movant so overwhelmingly favors the movant that no contrary verdict based on that evidence can ever stand controls here. There was no error in submitting this case to the jury. Likewise, there was no error in denying the new trial. It cannot be said in this case that the verdict is not supported by the greater weight or preponderance of the evidence or that it is contrary to the weight or preponderance of the evidence or that it is manifestly against the clear weight of the evidence. The evidence is conflicting and we assume it would still be conflicting on the next trial and no different result could be reasonably anticipated.

■■■ Objection is made to the admission of certain evidence where the sheriff testified, identified Exhibit No. 3 showing the intersection, and stated that it "was where this accident happened we are talking about". It is now argued in this court that this was error for the reason that the sheriff was not qualified as an expert witness, did not observe the occurrence, and was thus permitted to testify as to the point of impact. The testimony of the sheriff relates only to the general scene of the accident and does not suggest that he is defining and pinpointing the point of impact. Objection is also made that the plaintiff and his witnesses were permitted over objection to repeatedly locate the stop sign, that this was cumulative and prejudicial. It may well have been cumulative, but we are unable to see where it could possibly be construed as prejudicial. Objection is also made to a question to the plaintiff which stated "do you have as a result of this accident and the injuries you have described any limitations that you did not experience before this accident". An objection that this called for an expert opinion on whether these limitations resulted from the injuries was overruled. Cited is *American Smelting Co. v. Industrial Com.*, 353 Ill. 324, and a quotation from that opinion. We fail to see where it supports the defendant's position. Quot-

ing from p. 329, the court said: "* * * As to whether or not he is suffering from lead poisoning is a scientific question that must be determined by professional men, skilled in the practice of medicine and the diagnosing of human ailments. This is not a case where there is traumatic injury resulting in a loss of or injury to some portion of the human body about which the plaintiff is competent to testify, but is a scientific subject, to be determined from objective symptoms as to the type of human ailment from which he suffers." *Ingram v. Hammar Brothers White Lead Company*, 273 Ill.App. 152, likewise refers to lead poisoning. In *Kozlowski v. City of Chicago*, 113 Ill.App. 513, the question asked was quite broad and in that case the trial judge sustained an objection to the question and was not ruling upon the question posed in this review. These cases have no application to the testimony here admitted and no error occurred in the trial court's rulings.

■■■ The defendant objects to the giving of plaintiff's instruction No. 6 which is IPI 60.01, defining the duties of a motorist when he approaches an intersection protected by a stop sign. From the facts recited in this record, it is manifest that there was no error in the giving of this instruction. The defendant also assigns error in the refusal to give his instruction No. 17, which is a modification of IPI Instruction No. 21.07, and cites *Hoffman v. Wilson*, 60 Ill.App.2d 396, 208 N.E.2d 607, in support of their position. Hoffman held it was not error to give the instruction, but said nothing about whether or not it would be error to refuse it. Its refusal, when the court gave defendant's instruction No. 17A, which reads "If you decide for the defendants on the question of liability, you will have no occasion to consider the question of damages" adequately instructed on the point involved. The trial court's rulings on instructions under the facts in this case were proper.

■■ The last point raised by the defendant is that the verdict is excessive and that it should be reduced to $30,000. So reduced this would place the verdict in this case assuming liability on a "comparable basis with other cases of like character". There isn't a single citation to a case of like character where the verdict has been reduced in a similar case in the reviewing court. *Barango v. E. L. Hedstrom Coal Co.*, 12 Ill.App.2d 118, 138 N.E.2d 829, is cited for the proposition that there should be a remittitur when the verdict so far exceeds fair and reasonable compensation as to shock the judicial conscience. It should be observed that that case decided some fourteen years ago approved a verdict of $75,000. In the instant case, plaintiff was thirty-eight years old and his hospital and doctor expenses were about $1,955.98, and he was off work entirely for four months at a time when he was drawing a salary of $610 per month and returned only on a part-time basis over the next five months. Thus,

his out-of-pocket expense was in the neighborhood of $5,000 or $6,000, without regard to permanent condition of weakness and instability in his left knee as a result of its fracture, limitation in the use of his knee when he kneels and rises, reasonable expectation of an arthritic condition developing in it in the future, permanent disfigurement of his face, chest, left arm and leg, even though the doctor testified that the cosmetic result of the disfigurement was satisfactory. There was limitation in his left arm and in internal and external rotation, together with a weakness and inability to work above his head and his inability to straighten his arm. Under such circumstances, past, present and future pain considered, we cannot say that the jury's verdict was shockingly unreasonable or was the result of passion and/or prejudice.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Judgment affirmed.

TRAPP and CRAVEN, JJ., concur.