SARAH ROBINSON, Plaintiff-Appellee, *v.* WIEBOLDT STORES, INC., Defendant-Appellant.

First District (2nd Division)    No. 81-877

Opinion filed March 9, 1982.

Michael W. Rathsack and Richard C. Valentine, both of Chicago, for appellant.

John Kevin Kneafsey, P. C., of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:
Sarah Robinson brought this action against Wieboldt Stores, Inc., to recover damages for pain and suffering arising from a false imprisonment which occurred on November 21, 1977. The jury returned a verdict in favor of Robinson, awarding $5,000 in compensatory damages and $10,000 in punitive damages. Wieboldt Stores appeals, contending: (1) that judgment notwithstanding the verdict should have been entered in its favor because there was no evidence that a false imprisonment occurred; (2) that the judgment should be reversed and a new trial ordered because the verdict was against the manifest weight of the evidence; (3) that it was reversible error for the trial court to allow plaintiff to testify about pre-existing ailments and that the incident caused her to have an "attack"; and (4) that it was reversible error for plaintiff's counsel to repeatedly ask the jurors to put themselves in the position of plaintiff and to inject his opinions into the closing argument.

On November 21, 1977, at about 6:30 p.m., the 66-year-old plaintiff was shopping in the Evanston Wieboldt Store. She purchased a scarf on the first floor of the store with her credit card which she had for 48 years. Plaintiff chose to wear the scarf and removed the price tag and handed it to the sales clerk. The sales clerk did not object when plaintiff put the scarf around her neck. The clerk handed plaintiff a copy of the sales receipt which plaintiff put in her pocket. Plaintiff then took the escalator to the third floor of the store.

As plaintiff stepped off the escalator a security guard grabbed her by the left arm near her shoulder. The guard gave his name and showed his badge. He asked where she got the scarf and requested her to accompany him to a certain room. She told him that she purchased the scarf on the first floor and had the receipt in her pocket. During the entire confrontation the guard was holding tightly onto plaintiff's upper arm. Plaintiff, who was black, described the guard as white, tall, weighing about 200

pounds, having dark hair and wearing a dark brown suit. The guard grabbed the receipt from plaintiff's hand and continued to hold her upper arm. Plaintiff struggled to get the receipt back from the guard. Plaintiff testified she felt very sick, as if her head was blown off and chest was sinking in. She said she was frightened and that it seemed as if the incident lasted forever.

The guard took plaintiff down to the scarf department on the first floor. Plaintiff removed the scarf from her neck and noticed a small tag on the corner. This tag gave instructions for the care of the scarf. This was apparently what the security guard had seen before grabbing plaintiff. The sales clerk told the guard that plaintiff had purchased the scarf a short time earlier. The guard told the sales clerk that she had caused plaintiff a lot of trouble and had embarrassed her. He then walked away without apologizing to plaintiff.

Plaintiff testified that she felt very sick after the incident. She obtained some change to call a cab but was unable to complete the call because of the way she felt. She went outside the store and vomited. A clerk from the store who knew plaintiff saw her and asked what had happened. Plaintiff explained, and the clerk told her to see the manager the next day. Plaintiff said she couldn't because she was too sick. A cab was called, and plaintiff left for home. She sent a letter to the manager of Wieboldt's but received no response. Plaintiff stayed in bed for a week. She did not have to do so but said she simply did not feel well. She testified that she had high blood pressure prior to the incident. She also stated that she did not have angina prior to the incident but did so afterwards.

Defendant's chief of security, Curtis Chancelor, testified that he was working in the store on November 21, 1977, at the employee's entrance checking employee's packages. He said he had inspected the time cards and that there were no other security personnel working that evening. He testified that it was occasionally necessary to take further steps after being shown a sales receipt because of dishonest employees. He also stated that if a sales tag was on an item of merchandise he would stop the customer in a courteous way. On cross-examination, Chancelor testified that a police officer hired as a part-time security guard fit the description of the guard given by plaintiff. Defendant never produced the guard. The jury returned a verdict in favor of plaintiff in the amount of $5000 in compensatory damages and $10,000 in punitive damages.

Defendant's first contention on appeal is that judgment notwithstanding the verdict should have been entered in its favor because there is no evidence that a false imprisonment occurred. False imprisonment consists of the unlawful restraint, against a person's will, of that individual's personal liberty or freedom of locomotion. (*Karow v. Student Inns, Inc.*

(1976), 43 Ill. App. 3d 878, 881, 357 N.E.2d 682.) Defendant, however, is afforded some protection by sections 16A—5 and 16A—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 16A—5, 16A—6), which provide:

"§16A—5. Detention. Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner and for a reasonable length of time for all or any of the following purposes:

(a) To request identification;

(b) To verify such identification;

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable investigation of the ownership of such merchandise;

(d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer;

(e) In the case of a minor, to inform a peace officer, the parents, guardian or other private person interested in the welfare of that minor of this detention and to surrender custody of such minor to such person.

A merchant may make a detention as permitted herein off the premises of a retail mercantile establishment only if such detention is pursuant to an immediate pursuit of such person."

"§16A—6. Affirmative Defense. A detention as permitted in this Article does not constitute an arrest or an unlawful restraint, as defined in Section 10—3 of this Code, nor shall it render the merchant liable to the person so detained."

■■ The standard of review to be applied by this court in deciding whether judgment notwithstanding the verdict should be entered is whether all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) For defendant to be awarded judgment notwithstanding the verdict, it must be proved that plaintiff's assertions could never amount to a false imprisonment. A review of the record reveals that plaintiff's assertions do, in fact, present a case of false imprisonment. She testified that the security guard grabbed her tightly on her upper arm while they were on the third floor of defendant's store, restricting her freedom of locomotion. Even after presenting the guard with a sales receipt, she was forced to travel to the first floor of the store, further restricting her liberty and freedom of locomotion. To claim that plaintiff could have refused to go to the first floor and unilaterally ended the

confrontation ignores the realities of the situation. For defendant to prevail, it had the burden of proving it fell within the scope of sections 16A—5 and 16A—6, *i.e.*, that the actions of the security guard, defendant's agent, were reasonable. Such a factual determination was for the jury. Since the record reveals sufficient evidence to support the jury's determination that plaintiff was falsely imprisoned and that defendant's actions were unreasonable, defendant's request for judgment notwithstanding the verdict was properly denied.

Defendant also contends that punitive damages are inappropriate. It is important to note, however, that defendant made no objection to the instruction on punitive damages given to the jury. Failure to object to an instruction at the jury instructions conference constitutes a waiver of that objection. (*Malavolti v. Meridian Trucking Co.* (1979), 69 Ill. App. 3d 336, 342, 387 N.E.2d 426.) Defendant's contention has been waived and cannot be raised for the first time on appeal.

■■ In any event, we believe there was a factual basis for the punitive damages instruction. Such damages are permitted where an arrest is effected recklessly, oppressively, insultingly or wilfully, with a design to oppress and injure. (*Shelton v. Barry* (1946), 328 Ill. App. 497, 507, 66 N.E.2d 697.) The security guard's actions in grabbing plaintiff tightly by the upper arm and continuing to hold her tightly after he had been shown a sales receipt provide a sufficient basis for an instruction on punitive damages.

■■ Defendant argues that punitive damages should not be awarded against a corporate defendant for acts committed by an employee. This contention, as with the objection to the instruction on punitive damages, is waived since no objection was made at trial. (*Malavolti v. Meridian Trucking Co.* (1979), 69 Ill. App. 3d 336, 342.) Even if no waiver occurred, punitive damages are not foreclosed against this corporate defendant. Punitive damages may be awarded against a master or other principal because of the acts of an agent only under a limited set of circumstances. One such circumstance is where the principal or a managerial agent of the principal ratified or approved the act of the agent. (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 36-37, 330 N.E.2d 509, quoting Restatement (Second) of Agency §217C (1958).) In the present case, defendant has continued to defend the actions of its agent throughout the course of this litigation and has shown no attempt to alter its procedures in regard to situations such as the one encountered by plaintiff. In addition, defendant has failed to apologize to plaintiff for what defendant apparently feels were proper actions by its security guard. Under these circumstances, it was not error for the trial court to instruct the jury on punitive damages.

Defendant's next contention is that the jury verdict is against the

manifest weight of the evidence and should be reversed. A reviewing court will not disturb a jury verdict unless it is unreasonable, arbitrary and unsupported by the evidence. (*Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 722, 334 N.E.2d 311.) This includes the jury's award of damages, which is also within its discretion. (See *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452, 158 N.E.2d 63, *appeal dismissed* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256.) Defendant has offered, and the record reveals, no reason to believe that the jury verdict was unreasonable, arbitrary and unsupported by the evidence.

Defendant's next contention is that it was reversible error for the trial court to permit plaintiff to testify about pre-existing conditions such as high blood pressure and that the incident caused her to have angina and an "attack." Defendant argues that plaintiff was not competent to testify to these conditions and that since her testimony was the only evidence that such conditions existed, it was reversible error to admit the testimony. At the outset, we note that defendant properly objected to this testimony both prior to this particular questioning and during the testimony. Plaintiff's assertion that a waiver occurred is therefore without merit.

A similar question was faced by the Illinois Supreme Court in *American Smelting & Refining Co. v. Industrial Com.* (1933), 353 Ill. 324, 187 N.E. 495. That court stated:

> "As to whether or not he is suffering from lead poisoning is a scientific question that must be determined by professional men, skilled in the practice of medicine and the diagnosing of human ailments. This is not a case where there is a traumatic injury resulting in a loss of or injury to some portion of the human body about which the plaintiff is competent to testify, but is a scientific subject, to be determined from objective symptoms as to the type of human ailment from which he suffers." (353 Ill. 324, 329.)

In *Kozlowski v. City of Chicago* (1904), 113 Ill. App. 513, the court held it was improper for a plaintiff to testify about the effect of an injury to his health because the question called for the opinion of a witness upon a matter in which he was incompetent to testify. 113 Ill. App. 513, 516.

■■ While it would have been proper for plaintiff to describe any symptoms or physical limitations which she did not experience prior to the incident in Wieboldt's (*Franklin v. Randolph* (1971), 130 Ill. App. 2d 801, 805-06, 267 N.E.2d 337), as well as testify to how she felt, it was improper for her to testify concerning special medical conditions such as high blood pressure and angina. Plaintiff was not qualified as an expert and was therefore incompetent to testify regarding specific medical diagnoses.

Since plaintiff's testimony was the only evidence concerning the extent of her injuries, the error in admitting her incompetent medical testi-

mony, which was a substantial portion of the testimony, was prejudicial and mandates reversal of the award of damages. Although plaintiff's complaint sought recovery for pain and suffering, there is a strong likelihood that the prejudicial effect of the improper medical testimony weighed heavily in the award of damages. Since this error reflects only on the amount of damages that was awarded and not on the issue of liability, this cause is reversed and remanded on the issue of damages alone.

Defendant's final contention is that it was reversible error for plaintiff's counsel to repeatedly inject his opinion and ask the jurors to put themselves in the place of plaintiff. It was improper for plaintiff's counsel, during opening statement and closing argument, to ask the jurors to put themselves in the shoes of plaintiff (see *Offutt v. Pennoyer Merchants Transfer Co.* (1976), 36 Ill. App. 3d 194, 204, 343 N.E.2d 665), and to inject his personal opinion in the argument. (See *Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 198, 392 N.E.2d 688.) Any error, however, is waived as no objection was made to the comments during the trial.

We affirm the judgment in favor of plaintiff on the issue of liability. We reverse the award of both compensatory and punitive damages and remand the case to the trial court on the issue of those damages alone.

Affirmed in part; reversed in part and remanded.

DOWNING and PERLIN, JJ., concur.