EDWIN McMAHON, Plaintiff-Appellee and Cross-Appellant, v. RICHARD GORAZD, INC., *et al.,* Defendants-Appellees (Illinois Power Company, Defendant-Appellant and Cross-Appellee; Richard Gorazd, Inc., *et al.,* Third-Party Plaintiffs; Vallie L. Schneider, d/b/a Whiteway Painting & Decorating Company, Third-Party Defendant).

Fifth District No. 5—83—0402

Opinion filed June 27, 1985.

212

Cornelius Thomas Ducey, Jr., of Ducey, Feder & Ducey, Ltd., of Belleville, for Illinois Power Company.

Stephen M. Tillery, of Kassly, Bone, Becker, Dix & Tillery, P.C., of Belleville, for Edwin McMahon.

Michael B. Constance and Edward J. Szewczyk, both of Donovan, Hatch & Constance, P.C., of Belleville, for appellees Richard Gorazd, Inc., and Richard Gorazd.

JUSTICE KASSERMAN delivered the opinion of the court:

This action was brought to recover damages for personal injuries alleged to have been sustained by plaintiff, Edwin McMahon, in an incident which occurred April 9, 1975, while he was in the employ of Vallie L. Schneider. Plaintiff alleged that his injuries resulted from the negligence of defendant Richard Gorazd and from Gorazd's wilful violation of the Structural Work Act (Ill. Rev. Stat. 1983, ch. 40, par. 60 *et seq.*). Plaintiff also joined Illinois Power Company (Illinois Power) as defendant, alleging that his injuries resulted from the negligence of Illinois Power. Subsequently, Gorazd filed a counterclaim against Illinois Power and a third-party complaint against third-party defendant Vallie L. Schneider, in which he sought indemnity from both Illinois Power and Schneider.

Following a jury trial in the circuit court of St. Clair County, the jury returned verdicts in favor of defendant Gorazd against plaintiff and in favor of plaintiff against defendant Illinois Power in the amount of $739,000. The jury found plaintiff's own negligence contributed to his injuries and reduced the award to him by 50%. Judgment was entered on the verdicts. This matter is presented to this court on the appeal of defendant Illinois Power from the judgment in favor of plaintiff, and plaintiff has perfected a cross-appeal from the jury's finding of contributory negligence. Plaintiff separately appeals the judgment in favor of defendant Gorazd.

Plaintiff alleged that he suffered injuries as a result of an incident which occurred April 9, 1975. At the time of his injury, plaintiff was employed as a painter by third-party defendant Schneider. Plaintiff was painting a two-story dwelling which was being constructed by defendant Gorazd in O'Fallon. Gorazd was the general contractor, and Schneider was the painting subcontractor. In order to paint the upper story of the house, plaintiff had erected a scaffold by placing two ladders against the house with a 20-foot aluminum pick board as a cross member between the ladders. One of the ladders was placed against

that portion of the chimney of the house that extended at right angles from the side of the house. The pick board was approximately 12 feet off the ground. In the process of painting, plaintiff noticed a spot that he had missed. In order to reach that spot, plaintiff stepped off the pick board and onto the ladder resting against the chimney; then, when he reached for the spot, the ladder on which he had stepped fell. It is alleged that after plaintiff's fall, it was discovered that one of the rails of the ladder had caused the ground to cave in and had fallen into a void under the surface of the ground near where defendant Illinois Power previously, on February 14, 1975, had installed the underground gas line.

On appeal plaintiff first contends that the circuit court improperly denied his motion for judgment notwithstanding the verdict against defendant Gorazd on plaintiff's claim under the Structural Work Act. In this regard, motions for a directed verdict and judgment notwithstanding the verdict are properly granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) As stated by the court in *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921, in order for a plaintiff to recover in an action brought under the Structural Work Act, a plaintiff must establish that: "(1) he was engaged in or was passing under or by a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused his injuries; (6) the defendant had charge of the work; and (7) the defendant willfully violated the Act's safety standard. [Citation.]" (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 848, 463 N.E.2d 921, 924.) Where several such issues are submitted to a jury, the return of a general verdict, as in the case now before us, creates a presumption that all material issues of fact upon which proof was offered were found in favor of the prevailing party. (*Perry v. Saleda* (1975), 34 Ill. App. 3d 729, 735, 340 N.E.2d 314, 319; see *Peoples v. Granite City Steel Co.* (1982), 109 Ill. App. 3d 265, 270, 440 N.E.2d 363, 368; *Moulton v. Shell Oil Co.* (1976), 38 Ill. App. 3d 524, 526, 347 N.E.2d 825, 827.) Accordingly, in order for plaintiff to prevail on the instant appeal, this court must find that the evidence of defendant Gorazd's liability was so clear that under the rule in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the contrary verdict in favor of

Gorazd cannot stand. Thus, if this court determines that plaintiff has failed to meet the *Pedrick* standard for any one of the above-enumerated elements of proof, we are required to uphold the circuit court's denial of plaintiff's motion for judgment notwithstanding the verdict. An examination of the record in the case at bar leads us to conclude that the evidence introduced at trial presented a disputed question of fact as to the existence of a wilful violation of the Structural Work Act, a question which must therefore be left to the jury for resolution. (*Peoples v. Granite City Steel Co.* (1982), 109 Ill. App. 3d 265, 440 N.E.2d 363.) The grant of judgment notwithstanding the verdict under such circumstances would have been improper, and the circuit court's refusal to do so was thus not error.

■■ ■ A wilful violation of the Structural Work Act occurs when one having charge of the work knows that a dangerous condition exists or by the exercise of reasonable care could have discovered the existence of the dangerous condition. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 214, 430 N.E.2d 699, 704.) We are unable to say that the evidence overwhelmingly supports the conclusion that the unstable condition of the ground upon which plaintiff erected his scaffold was known to or, by the exercise of reasonable care, should have been known to defendant Gorazd. Indeed, the fact that the plaintiff, who himself erected his scaffold upon that ground, was unable to detect its unstable condition is evidence that the condition was not readily discernible. Plaintiff relies on the case of *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868, a case in which a jury returned a verdict holding the contractor liable for a wilful violation of the Structural Work Act. In *McInerney,* the plaintiff had sustained injuries as a result of a fall from a ladder which had been placed on a back-sloping driveway which was covered with construction debris. However, the fact that the unstable placement of the ladder was plainly visible to the contractor in *McInerney* distinguishes it from the case at bar.

Furthermore, in *McInerney* the circuit court's granting of a motion for judgment notwithstanding the verdict was reversed on appeal to the appellate court, and the supreme court affirmed the appellate court. The supreme court determined that because the evidence presented was sufficient to raise a question of fact and the determination of that question was for the jury, the grant of judgment notwithstanding the verdict was improper. (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 103, 338 N.E.2d 868, 874.) As we have indicated, the evidence concerning whether defendant Gorazd knew or should have known of the unstable condition of the ground on which

plaintiff erected his scaffold presents a disputed question of fact. We are not free to reweigh the evidence or assess the credibility of the testimony and set aside a jury's verdict merely because a different conclusion could have been drawn from the evidence. (*Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 528, 418 N.E.2d 822, 824.) This question was properly left for the jury's determination, and the circuit court correctly denied plaintiff's motion for judgment notwithstanding the verdict.

■■ ■ Plaintiff next urges that the jury's finding of nonliability under the Structural Work Act is inconsistent with the jury's finding that plaintiff's own negligence contributed to his injuries. Plaintiff contends that the alleged inconsistency exists, due to the fact that any conduct for which plaintiff could be found negligent necessarily implies negligence on the part of defendant Gorazd, which in turn would constitute a wilful violation of the Structural Work Act. Plaintiff reasons that the only possible conduct for which he could be found contributorily negligent would be either his placement of his scaffold on unstable ground or his failure to properly brace his scaffold. Plaintiff maintains that he was in no better a position to detect the unstable condition of the ground than was defendant Gorazd and that, if the scaffold was improperly braced, that fact was known to defendant Gorazd in as much as it was Gorazd's testimony which brought that fact to light. The flaw in plaintiff's reasoning is that it fails to address the possibility that it was plaintiff's improper usage of the scaffold which contributed to his fall. The record contains evidence that the ladder upon which plaintiff stood slipped and plaintiff fell while plaintiff was attempting to paint a spot beyond the area he could safely reach from the scaffold. Based on this evidence, the jury could well have concluded that as between plaintiff and Gorazd, plaintiff's conduct was the sole proximate cause of plaintiff's fall. Where only plaintiff's negligence causes the injuries, no liability arises under the Structural Work Act. (*Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 573, 408 N.E.2d 117, 119-20.) So viewed, there is no inconsistency between the jury's verdicts.

■■ The presence of this same evidence defeats plaintiff's final assertion that the jury's finding that plaintiff's own negligence contributed to his injuries was contrary to the manifest weight of the evidence. The only issues which remain are those raised by defendant Illinois Power.

■■ In its appeal, Illinois Power initially contends that the circuit court improperly denied its motions for directed verdict and judgment notwithstanding the verdict. As we have indicated previously, such

motions are properly granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) It is our determination that the circuit court properly denied Illinois Power's motions for directed verdict and judgment notwithstanding the verdict. We find the evidence to be sufficient to support the jury's conclusion that Illinois Power was guilty of negligence proximately causing plaintiff's injuries.

Liability in suits based upon negligence arises only if the defendant is guilty of a breach of duty owed to persons whose injuries proximately resulted from the breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162-63, 456 N.E.2d 116, 118-19; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1044, 462 N.E.2d 502, 504.) In the case at bar, Illinois Power contends that (1) it was under no duty to plaintiff, (2) that even if it were under such a duty, there is insufficient evidence to support the jury's finding that Illinois Power was guilty of a breach of that duty, and (3) that even if such a breach occurred, there is insufficient evidence to support the jury's finding that the breach proximately caused plaintiff's injuries.

■ It is our conclusion that Illinois Power was under a duty to prevent or correct subsidence at the site of its excavations and to restore the ground to a state of reasonable safety. It could discharge this duty by backfilling and compacting the earth in the excavation, by returning to inspect the excavation, and by filling in any subsidence caused by the expected settling of the earth after such an excavation. (See *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 357, 272 N.E.2d 369, 377.) Illinois Power owed this duty to those persons likely to be harmed if the excavation was left in an unsafe condition. It could not seriously be contended that the plaintiff, with his marked need for stable ground on which to place his scaffold, was not among those to whom this duty was owed.

With regard to its contention that there is insufficient evidence to support the jury's finding that Illinois Power was guilty of a breach of this duty, Illinois Power urges that plaintiff did not produce any evidence that the manner in which Illinois Power backfilled the trench it dug to install the gas line was improper. We are of the opinion that, under the facts of the instant case, the lack of any such evidence is unimportant. The backfilling of the trench following excavation, even though it may have made the condition of the ground reasonably safe temporarily, does not fully discharge Illinois Power of its duty. There

is testimony that even if properly backfilled and tamped down, the trenches would still settle. An employee of Illinois Power testified that all the trenches dug in that particular subdivision were dug and backfilled in a similar fashion. Other witnesses testified that those trenches were known to settle. Illinois Power admits having never returned to the location to inspect the trench for subsidence or to fill in any subsidence caused by the eventual settling of the earth after excavation. In our opinion these omissions provide a sufficient evidentiary basis for a finding of breach of duty by Illinois Power. See *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 357, 272 N.E.2d 369, 377.

Illinois Power further contends that there is evidence to indicate that its excavation had nothing to do with plaintiff's fall. This contention is based on plaintiff's statements that his ladder slipped off of the fireplace and did not itself sink into the ground. However, this is not the only evidence in the record on the issue of causation. Marcel Langenhorst and Willard Bugger, carpenters engaged in the construction of the dwelling, were present when plaintiff fell and both testified at trial. Langenhorst stated that from the position of the ladder after plaintiff's fall, he was of the opinion that the ladder fell into Illinois Power's excavation. Bugger observed that a cave-in existed at the site of Illinois Power's excavation after plaintiff fell but not before. Bugger was of the opinion that the trench was the cause of the collapse of the scaffold. Plaintiff and Langenhorst both testified that the ladder fell away from the house, sideways and forward, which plaintiff urges indicates that the outside portion of the ladder fell into the hole, causing the collapse of the scaffold. Defendant Gorazd testified that the ladder fell into the hole, causing it to turn off the chimney. This evidence supports the jury's finding that the condition of the ground was a proximate cause of plaintiff's injuries. In this regard, the questions of whether there has been a breach of duty and whether that breach proximately caused an injury are factual matters and as such are to be determined by the jury. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 119; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1044-45, 462 N.E.2d 502, 505.) Furthermore, a jury's verdict cannot be set aside merely because there is conflicting evidence on factual questions. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 554, 437 N.E.2d 872, 879-80.

Illinois Power also assets that under what it and plaintiff refer to as the "accepted work doctrine," Illinois Power should have been held to be free from liability. The rationale of the accepted work doctrine is that an independent contractor who is employed to con-

struct or install any given work or instrumentality is no longer liable to third persons for injuries received as a result of defective construction or installation after he has completed the contract and his work has been accepted by the employer and he has been discharged. (See *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 40, 139 N.E.2d 275, 282-83.) However, Illinois Power's reliance on this doctrine is misplaced for the reason that the accepted work doctrine is no longer determinative of the question of liability in Illinois. Instead, the question of liability is to be determined under traditional principles of negligence. *Hunt v. Blasius* (1979), 74 Ill. 2d 203, 209, 384 N.E.2d 368, 371; *Fournier v. 3113 West Jefferson Partnership* (1981), 100 Ill. App. 3d 820, 822, 427 N.E.2d 408, 410.

■■ ■ Illinois Power next contends that it was deprived of a fair and impartial trial by the admission or exclusion of certain evidence. The first such error urged by Illinois Power is the decision of the circuit court in overruling its objection to the following questions asked of plaintiff by his attorney:

"Q. Have you worked at all, received any wage at all in 1982?

A. Not a nickel.

Q. What have you been living on?

A. Well, we had a little bit in the bank, but if you got youngins [*sic*], you don't make much. And then the wife borrowed some from her father. We borrowed some from my daughter in New York and some from my brother-in-law.

* * *

Q. Does your wife work?

A. No, she doesn't.

* * *

Q. Did you receive [physical therapy] earlier this year at some other locations?

A. At St. Elizabeth's.

Q. Why did you leave St. Elizabeth's?

A. Because they took my card out of the file.

Q. Why did they do that?

A. Because I didn't pay them.

Q. Did you receive it anywhere else?

A. Then I went to Memorial and they took my card out of the file.

Q. Why?

A. Because I didn't pay them.

Q. Did you have the money to pay them?

A. No."

Reference to the financial status of the parties may constitute reversible error. (*Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 946, 343 N.E.2d 6, 10; *Panos v. McMahon* (1974), 23 Ill. App. 3d 776, 786, 320 N.E.2d 185, 193.) However, the language complained of must not only reasonably be understood to refer to the financial status of one of the parties but it must be shown that it was so harmful and prejudicial as to have resulted in the return of an improper verdict. (*Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 343 N.E.2d 6.) Although plaintiff's counsel's questioning was improper, we conclude that reversal is not required. The questioning complained of does not constitute a significant portion of the evidence taken at trial which included over two weeks of testimony. (See *Pumo v. Foltynewicz* (1980), 82 Ill. App. 3d 178, 402 N.E.2d 900.) Moreover, this same record contains more than sufficient evidence to support the jury's verdict. We are satisfied that the failure of the circuit court to sustain Illinois Power's objection is therefore harmless error.

 Illinois Power next contends that the circuit court erred in refusing to allow the plaintiff to be questioned concerning his receipt of unemployment compensation during the months of January, March and April of 1980 and in prohibiting defendant from introducing in evidence those portions of plaintiff's 1980 income tax returns which indicated the receipt of those benefits. Illinois Power urges that the receipt of unemployment compensation benefits is competent evidence since plaintiff must have represented to the Illinois Department of Labor that he was ready, willing and able to work, in order to have received those benefits, thus refuting, at least to some extent, plaintiff's claim of disability. Illinois Power therefore urges that the receipt of those benefits would have offset plaintiff's claim for lost wages. The record indicates that plaintiff did testify that during this period he did make a statement to the effect that he was ready, able and willing to work; however, defendants were not allowed to inquire as to whom plaintiff had made that statement.

Plaintiff first maintains that Illinois Power has not properly preserved this issue for our review by making a formal offer of proof. We disagree. No formal offer of proof is necessary where the materiality and relevancy of the evidence offered is obvious. *Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 388, 439 N.E.2d 102, 106.

 ██ Plaintiff further relies on section 1900 of the Unemploy-

ment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 640), which provides in relevant part that:

"Except as is hereinafter provided in this Section, information obtained from any individual or employing unit pursuant to the administration of this Act shall be confidential and shall not be published or be open to public inspection, nor be used in any court in any action or proceeding pending therein, nor be admissible in evidence in any action or proceeding other than one arising out of the provisions of this Act. ***"

In *Smith v. Illinois Valley Ice Cream Co.* (1959), 20 Ill. App. 2d 312, 320, 156 N.E.2d 361, 365, this provision was construed to prohibit the admission of testimony of an employee of the Department of Labor that the plaintiff in *Smith* had received unemployment compensation and had made a statement to the department employee that he was able to work. There, the defendant sought to have an employee of the Illinois Department of Labor testify concerning information the witness had obtained from the plaintiff. Since the statute prohibits disclosure by the Illinois Department of Labor of information obtained from any individual, the *Smith* case fell squarely under the rule. However, in the case at bar, the disclosure is not being sought from the Illinois Department of Labor. Instead, it is being sought from the plaintiff himself. We are of the opinion that it would be manifestly unfair to permit the plaintiff to avail himself of this privilege against disclosure, and thereby gain an advantage on the merits of his suit. An analogous controversy was presented in *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57, where a plaintiff's action was held properly to have been dismissed when plaintiff insisted on asserting his constitutional privilege against self-incrimination and refused to answer questions pertinent to the issues involved. Applying similar reasoning to the instant case, it is our determination that a plaintiff cannot invoke the privilege provided by section 1900 of the Unemployment Insurance Act and prevent disclosure of unemployment compensation received and at the same time maintain a claim for lost earnings covering that same period. We conclude, therefore, that the trial court erred in refusing to receive evidence of the payment of unemployment benefits to plaintiff. However, we do not consider this error of the trial court to be of such magnitude as to require reversal. The period during which plaintiff received the unemployment compensation benefits in question comprised only a small portion of plaintiff's claim. Furthermore, plaintiff admitted in his own testimony that he was ready, willing and able to work during that period. We are therefore unable to say that the lack of disclosure so prej-

udiced Illinois Power that reversal is required.

■■ Illinois Power next urges that the circuit court erred when it permitted plaintiff to testify about the medication he was then taking and the effect that medication had on his testimony. Specifically, Illinois Power takes issue with the following colloquy between plaintiff and his attorney:

"Q. What effect does the medication you are on have on your thinking and recalling of dates?

A. Muscle relaxers—I take eight of them a day. And well, they relax your muscle. I guess my brain is a muscle. You guys have got four suitcases apiece and I have one. That's all."

Illinois Power maintains that this question calls for a medical opinion and that plaintiff was incompetent to so testify, citing *Robinson v. Wieboldt Stores Inc.* (1982), 104 Ill. App. 3d 1021, 433 N.E.2d 1005. We do not agree. We conclude that the question is more properly characterized as one calling for plaintiff to describe any symptoms which he experienced after taking the drugs. So viewed the question was proper. See *Franklin v. Randolph* (1971), 130 Ill. App. 2d 801, 267 N.E.2d 337.

■■ Illinois Power also contends that the circuit court erred in refusing to strike the testimony of Dr. Robert L. Bolton, a witness for the plaintiff, relating to neck injuries sustained by plaintiff. Dr. Bolton testified that plaintiff sustained a neck strain as a result of his fall from the ladder. Later, while plaintiff was being cross-examined, plaintiff testified that he did not suffer any neck injury. Illinois Power argues that based on plaintiff's statement, Dr. Bolton's testimony concerning plaintiff's neck injury should have been stricken. We do not agree. While plaintiff's statement contradicts Dr. Bolton's testimony, such a contradiction affects only the weight to be given the testimony and did not render the testimony inadmissible. *People v. Stock* (1973), 15 Ill. App. 3d 722, 729, 304 N.E.2d 646, 651-52.

■■■ Plaintiff was permitted to introduce an itemized bill from St. Elizabeth's Hospital in Belleville, covering the period from November 6, 1981, to December 5, 1981. The bill totaled $8,037.05. Portions of the bill admittedly were not related to plaintiff's injuries. Those portions were identified; nevertheless, the entire bill was submitted to the jury. On appeal, Illinois Power contends that this was error in that it permitted evidence of damages not related to plaintiff's injuries to be presented to the jury. In reviewing the report of proceedings, it is apparent that Illinois Power made no timely objection to the admission of such evidence on the grounds argued in its brief. Where the grounds of objection to admission of evidence relied upon on ap-

peal have not been included in the objection entered in the trial court, we will not consider such grounds on appeal. (*Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 1006-07, 450 N.E.2d 1374, 1376-77.) Furthermore, since the jury was informed of which items in the bill did not relate to plaintiff's injury, the admission of the bill did not result in prejudice to Illinois Power.

██ Illinois Power further contends that the trial court erred in permitting plaintiff to introduce (1) the testimony of a pharmacist concerning all drugs sold to plaintiff since 1975 and (2) plaintiff's Group Exhibit No. 31, a summary of all plaintiff's drug purchases from Moody's Pharmacy in Fairview Heights since the accident. Illinois Power objects to the admission of this evidence on the grounds that plaintiff failed to establish a causal connection between the drugs purchased by him and the injury which is the basis of his suit. Illinois Power argues that, at the time such testimony and summary were offered, there had been nothing more than general testimony from various doctors to the effect that they had prescribed various pain medications. We conclude, however, that based on the evidence adduced at trial, no error occurred in the admission of such testimony and the exhibit in question. There is ample medical evidence in the record to establish that the medications sold to plaintiff were causally related to plaintiff's injuries.

██ The remaining issues raised by defendant Illinois Power all deal with the jury's award of damages. The jury returned a verdict which totaled $739,000. Broken down by elements of damages, the jury awarded $124,000 for disability resulting from the injury, $100,000 for past and future pain and suffering, $140,000 for past and future medical expenses, and $375,000 for lost wages and diminished earnings capacity. Having found that the plaintiff's own negligence contributed to his injuries, the jury reduced the award to him by 50% to $369,500.

Illinois Power first contends that there was not a sufficient evidentiary basis to support these awards. We have reviewed the record on appeal; and, although we note sharp conflict in the testimony of the medical experts with regard to the extent of plaintiff's injuries, we conclude that there is a sufficient evidentiary basis for those awards.

The accident occurred on April 9, 1975. Plaintiff was examined by Dr. Adrian Eisele, his family physician, for the first time on April 22, 1975. Dr. Eisele continued to treat plaintiff on a periodic basis until April 12, 1977, when the doctor retired. Dr. Eisele recorded that plaintiff complained of pain in his left knee and lower back. On later

visits, plaintiff complained of pain in his groin and left hip, nervousness and insomnia. The record indicates that plaintiff's wife later complained that plaintiff had lost his desire for sex. Dr. Eisele had plaintiff undergo X-ray examination, which revealed a 25% compression fracture of plaintiff's twelfth thoracic vertebra but, other than swelling, no visible damage to the knee. Dr. Eisele diagnosed that as a result of the fall plaintiff suffered the compression fracture, a bruise to the inner surface of the left knee and an inguinal hernia. Plaintiff was fitted with a back brace. Analgesics and tranquilizers were prescribed for the pain. Plaintiff's left knee was wrapped, then later braced and he was ordered to undertake physical therapy for the knee. Dr. Eisele operated to correct the hernia. Dr. Eisele's prognosis was that plaintiff's back and knee conditions were permanent, that plaintiff would continue to experience pain and pain-related symptoms such as the insomnia, and that the pain would likely increase. Dr. Eisele stated that plaintiff's condition would make it difficult for him to walk and climb and that if required to do so, plaintiff would fatigue easily. Dr. Eisele noted that plaintiff's left knee had begun to falter and that this, in the doctor's opinion, constituted a work hazard.

Plaintiff was examined by Dr. John R. Wagner, a board certified orthopedic surgeon, for the first time on May 15, 1975. Dr. Wagner continued to treat plaintiff until July 12, 1979. Dr. Wagner recorded that plaintiff complained of pain in his groin, lower back and both knees. Dr. Wagner performed both X-ray and physical examinations and diagnosed plaintiff as having suffered a compression fracture of the 12th thoracic vertebra and a bruise to the inner surface of the left knee cap. The doctor noted some loss of forward flexion of the back. Dr. Wagner's prognosis was that plaintiff would probably continue to experience pain in his back but otherwise was capable of heavy duty labor and required no additional treatment.

Plaintiff was examined by Dr. Marshall B. Conrad, a board certified orthopedic surgeon, on March 30, 1976. Dr. Conrad examined plaintiff only once and his examination was limited to plaintiff's knees. Plaintiff was examined by Dr. Conrad at the request of one of the defendants. Dr. Conrad recorded that plaintiff complained of pain in his left knee and buttock. Dr. Conrad had plaintiff undergo X-ray, neurological and physical examination. The X-ray photographs revealed no visible damage to the knee. The neurological examination disclosed no nerve involvement. Dr. Conrad diagnosed that plaintiff suffered a bruise injury to the left knee and buttock. The doctor attributed plaintiff's left knee pain to the injury and to arthritis that the doctor found to be present in both knees. The doctor did not believe

plaintiff required any additional treatment beyond that already prescribed by others.

Plaintiff was examined by Dr. Augusto Climaco, a board certified neurosurgeon, on July 6, 1976. Dr. Climaco examined plaintiff on one occasion when he performed a neurological examination. Plaintiff was examined by Dr. Climaco at the request of Dr. Eisele. Dr. Climaco recorded that plaintiff complained of low back pain and muscle spasms. Dr. Climaco's examination disclosed no nerve damage.

Plaintiff was examined on July 27, 1977, by Dr. Robert L. Bolton, a physician specializing in industrial medicine and surgery. Dr. Bolton continued to treat plaintiff on a periodic basis up to the time of the trial. Dr. Bolton noted that plaintiff complained of pain in his left knee, left front thigh, lower back and abdomen. Dr. Bolton performed X-ray and physical examinations, which revealed tenderness and some swelling of the left knee, tenderness of the abdomen, muscle spasms and some loss of range of motion in the back due to pain there, and tenderness of the neck. The X-ray photographs disclosed a compression fracture of the 12th thoracic vertebra and a curvature of the spine at the neck. Dr. Bolton diagnosed that plaintiff, as a result of his fall, had suffered an injury to his left knee, left thigh and abdomen; that he sustained a lumbar strain resulting in curvature of the lumbar spine; and that he had sustained a compression fracture of the 12th thoracic vertebra. Dr. Bolton had plaintiff undergo physical therapy for his back and knee and prescribed various pain medications. Plaintiff's knee continued to be a source of complaints. Based on X-ray photographs taken of plaintiff which revealed a tear in the knee cartilage, on February 27, 1978, plaintiff was hospitalized by Dr. Bolton and underwent knee surgery. The surgery alleviated for a time some of the pain; however, the joint itself was still unstable and the pain eventually returned. On June 25, 1979, the knee faltered, nearly causing plaintiff to fall from a scaffolding on which he was working. His own efforts to break his fall caused plaintiff to rupture one of the tendons in his right arm. On August 15, 1979, plaintiff was hospitalized by Dr. Bolton and underwent surgery to repair the tendon. Dr. Bolton's prognosis was that plaintiff's back and knee conditions were permanent; that he would continue to experience back pain and would require therapy and medication to relieve the pain; and that his knee would continue to cause him pain, is unstable and could require further surgery. The tenderness present in plaintiff's abdomen was diagnosed as a left inguinal hernia which could require another hernia operation. As a result of the above, the doctor was of the opinion that plaintiff would have difficulties performing the kind of work he had

been doing and that if plaintiff were to work on scaffolding, the instability of his knee would cause plaintiff to be a hazard to himself and others.

Plaintiff was examined by Dr. Marvin Rosecan, a board certified internist, on November 2, 1981. Dr. Rosecan continued to treat plaintiff up until the time of trial. Dr. Rosecan recorded that plaintiff complained of pain in his left knee and lower back and of numbness in his left leg. Dr. Rosecan performed X-ray and physical examinations. On November 6, 1981, Dr. Rosecan had plaintiff hospitalized for further diagnostic testing and treatment. While hospitalized, plaintiff underwent neurological examinations. The first such examination proved negative. Dr. Rosecan had the examination repeated; and on re-examination, Dr. Rosecan diagnosed nerve root damage. Plaintiff remained hospitalized until December 8, 1981. Dr. Rosecan diagnosed that as a result of his fall on April 9, 1975, plaintiff suffered a compression fracture of the 12th thoracic vertebra, lumbar back strain, nerve root damage, hernia, and damage to the ligaments of his left knee. Dr. Rosecan noted that plaintiff suffered muscle spasms and occasional bowel incontinence. Dr. Rosecan attributed the incontinence to the nerve damage which plaintiff suffered as a result of his fall. Dr. Rosecan prescribed physical therapy, epidural nerve blocks and various other anti-inflammatory medications to reduce plaintiff's pain, some of which were administered by spinal injection. Dr. Rosecan's prognosis was that plaintiff would continue to experience pain and some limitation of movement. The doctor recommended that plaintiff continue his treatment. Dr. Rosecan noted little improvement in plaintiff's condition and stated that plaintiff could not perform manual labor.

At defendant Illinois Power's request, Dr. John Patrick Crotty, a board certified radiologist, examined the various X-ray photographs taken of plaintiff. After reviewing the X-ray photographs of plaintiff's left knee, Dr. Crotty concluded that there was no evidence of any arthritis and that there was no tear in plaintiff's knee cartilage where Dr. Bolton had testified there was a tear. After reviewing the X-ray photographs of plaintiff's lower back, Dr. Crotty concluded that plaintiff had suffered a mild compression fracture of the 12th thoracic vertebra. Dr. Crotty found some curvature of the spine at the cite of the fracture. In Dr. Crotty's opinion, the X-ray photographs disclosed no arthritis in plaintiff's back and no visible damage to the nerves coming off the spinal cord.

Several other doctors testified; however, the medical testimony we have summarized is representative of their testimony and specific reference to such testimony would contribute nothing.

The evidentiary basis for the award of damages for disability are the injuries to plaintiff's back and knee. It is undisputed that plaintiff suffered a compression fracture of the 12th thoracic vertebra. As a result of his injuries, plaintiff has been hospitalized, has undergone physical therapy and is taking medication to relieve the pain he suffers. Plaintiff developed some bowel incontinence which he had not suffered prior to his fall. Dr. Rosecan testified that the cause of the incontinence was nerve damage which resulted from the injury to plaintiff's back.

We conclude that the medical evidence adduced at trial was sufficient to establish disability. We further conclude that the evidence provided a sufficient evidentiary basis for the award of damages for past and future pain and suffering. Plaintiff testified that his pain has become progressively worse. Doctors Eisele and Rosecan testified that plaintiff's symptoms will continue and will get worse.

█ The evidentiary basis for the award of damages for past and future medical expenses was that plaintiff has been and is still undergoing treatment for his injuries and the associated pain. Plaintiff has been hospitalized on at least three occasions. Dr. Rosecan testified that the condition could get worse and would then require further inpatient treatment. Plaintiff's medical expenses had already exceeded $20,000 at the time of trial.

█ The record conclusively establishes that plaintiff was hospitalized for treatment and could not work and that, when he was not hospitalized, the type of work plaintiff could safely perform was restricted. He has not worked since November 4, 1981, pursuant to Dr. Rosecan's orders. His condition, as was indicated earlier, is not expected to improve. These facts provide an evidentiary basis for the award of damages for lost wages and diminished earning capacity.

Based on the above, we conclude that the jury was warranted in awarding damages for each of the foregoing elements of damage.

█ █ Illinois Power's final contention is that the verdict of the jury was excessive. In this regard this court noted, in *Ball v. Continental Southern Lines, Inc.* (1977), 45 Ill. App. 3d 827, 360 N.E.2d 81, that on appeal, a court of review may examine the damage award and order a remittitur or a new trial in appropriate cases. The court further observed that the very nature of personal injury cases makes it impossible to establish a precise formula to determine whether a particular award is excessive or not (45 Ill. App. 3d 827, 831, 360 N.E.2d 81, 84.) The determination of an adequate verdict is peculiarly within the province of the jury and great weight must be given to its determination. It is well established in Illinois that the limits of a ver-

dict must of necessity be flexible and that, unless the total amount of the verdict falls outside the limits of fair and reasonable compensation, or results from passion or prejudice, or is so large as to shock the judicial conscience, a reviewing court will not disturb the award. *Cf. Jones v. Karraker* (1983), 98 Ill. 2d 487, 492, 457 N.E.2d 23, 25-26; *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453, 158 N.E.2d 63, 69; *Ball v. Continental Southern Lines, Inc.* (1977), 45 Ill. App. 3d 827, 831, 360 N.E.2d 81, 84; *Hedrich v. Borden Co.* (1968), 100 Ill. App. 2d 237, 251, 241 N.E.2d 546, 553.

 The injuries suffered by plaintiff in the case at bar are shown by the evidence to be neither imaginary nor speculative (see *DMI, Inc. v. Country Mutual Insurance Co.* (1980), 82 Ill. App. 3d 113, 402 N.E.2d 805), and nothing has been presented that would compel us to conclude that the verdict was excessive. Therefore, we reject Illinois Power's assertion that the verdict is so excessive as to require reversal.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.